# BOARD OF EDUCATION OF OGDEN CITY v. HUNTER et al.

No. 2980.  Decided September 12, 1916.  (159 Pac. 1019.)

1. STATUTES—GENERAL OR SPECIAL LAW. The mere fact that Laws 1915, c. 115, amends only the proviso of Comp. Laws 1907, section 1936, by increasing the tax rate of cities of a certain class, and that Laws 1915, c. 111, amends such proviso, and also amends other sections of the school law, does not make chapter 115 a special law. (Page 379.)

2. STATUTES—CONSTRUCTION—EFFECT TO ALL PROVISIONS—CONFLICT. Where a conflict exists between two enactments, whether enacted at the same or at different sessions, the court must, if possible, give force and effect to all the provisions contained in both acts, notwithstanding the apparent conflict. (Page 379.)

3. STATUTES—CONSTRUCTION—EXTRINSIC AIDS. It is the duty of the courts in construing statutes, and especially in case of conflict, to consider all matters that may affect their validity or meaning, including the history of legislation and the reasons for and against their passage. (Page 280.)

4. SCHOOLS AND SCHOOL DISTRICTS—TAXES—STATUTES—CONFLICT. Laws 1915, c. 115, amends the proviso of Comp. Laws 1907, section 1936, fixing the tax rate for school purposes by increasing the school levies for cities of the second class, because the rate fixed by the original section was deemed insufficient for that purpose, and takes effect May 22, 1915. Laws 1915, c. 111, also amends such proviso, became effective January 1, 1916, and reduced such rates. *Held*, that the acts were not conflicting. (Page 280.)

5. SCHOOLS AND SCHOOL DISTRICTS—REPEAL OF STATUTE—CONFLICTING PROVISIONS. Laws 1915, c. 115, re-enacting Comp. Laws 1907, section 1936, and merely amending the proviso thereof, fixing the tax rate for school purposes by increasing the school taxes for the year 1915 for cities of the second class because the rate permitted in the original section was deemed insufficient for that purpose, was repealed so far as it conflicted with Laws 1915, c. 111, re-enacting such section and amending the proviso approved at the same time, but not effective until January 1, 1916, and, in view of the increased assessments, reducing the rate. (Page 380.)

6. STATUTES—REPEAL—RE-ENACTMENT. Such parts of chapter 115 as were not in conflict with chapter 111 were mere re-enactments, having force and effect from their original enactment. (Page 380.)

7. STATUTES—REPEAL—TIME. Where a statute is made effective only from a future date, but in terms repeals a former law on the subject, the repealing clause becomes effective only when the statute goes into effect. (Page 382.)

8. EVIDENCE—JUDICIAL NOTICE—LEGISLATIVE POLICY—SCHOOL EXPENSES. The court takes judicial notice that it has always been the legislative policy to provide all the revenue necessary to carry on the public schools for a period of at least nine months in each year. (Page 383.)

9. STATUTES—CONSTITUTIONAL PROVISIONS—GENERAL OR SPECIAL LAWS—CLASSIFICATION. Cities and any other subjects may be classified without contravening Const. art. 6, section 26, subdn. 18, providing that in all cases where a general law can be applicable, no special law shall be enacted; but such classification must be reasonable and natural, and not artificial or arbitrary. (Page 383.)

10.  STATUTES—CLASS LEGISLATION—SCHOOL TAXES.   Laws 1915, c.
     111, effective January 1, 1916, amending the proviso of Comp.
     Laws 1907, section 1936, as to the rate of school taxes so as to
     provide that the tax for school purposes in cities of the first
     and second classes having an assessed valuation of $20,000,000
     or more, shall not exceed in any one year 3½ mills on the
     dollar upon all taxable property, and, in cities of the second
     class having an assessed value of less than $20,000,000, shall
     not exceed 3 7/10 mills on the dollar, was invalid, since the
     classification was unreasonable, arbitrary, and artificial, and
     without regard to the character of the legislation, in that it
     was unequal, unjust, and did not operate uniformly on all
     taxpayers assessed to the same extent in the different cities
     of the same class, nor upon the public schools in such city.
     (Page 383.)

11.  STATUTES—EFFECT—INVALIDITY OF REPEALING LAW.   The effect
     of such invalidity, in view of the fact that chapter 111 had
     repealed all statutes in conflict therewith, including the con-
     flicting provisions of Laws 1915, c. 115, which had amended
     the proviso of Comp. Laws 1907, section 1936, and increased
     the tax rate for school purposes, was to leave the rate or limita-
     tion fixed for a city of the second class by chapter 115, still
     in force, under the rule that when a statute repeals another
     statute, or provision on the same subject, so much of the other
     statute as is superseded by the invalid part of the later statute
     is not repealed, but continues in full force and effect.   (Page
     387.)

Original application by the Board of Education of Ogden
City, for a writ of mandate, against William C. Hunter and
others, commissioners of Weber County, Utah, Harry Hales,
County Clerk, James L. Robson, County Assessor, and J. E.
Storey, County Treasurer, commanding them to levy and col-
lect a tax against the property of the school district in the
amount required by plaintiff, etc.

Peremptory writ of mandate ordered to be issued.

*Valentine Gideon* and *Reinhart L. Gideon,* for plaintiff.

*I. B. Evans* and *Jos. E. Evans,* for defendants.

FRICK, J.

The plaintiff filed its application in this court for a writ of
mandate against the defendants named in the title, ''command-

ing said defendants and each of them as officers of Weber County aforesaid, to levy and collect a tax against the property of said school district in such amount as required by plaintiff,'' etc.   An alternative writ of mandate was issued, requiring the defendants to comply with plaintiff's prayer or show cause why they refuse.   They have appeared and have demurred generally to plaintiff's complaint.   They have also filed an answer, but the only denial made therein relates to a question of law and not of fact, and is therefore immaterial. The facts, all of which are without dispute, will sufficiently be made to appear from the body of the opinion.

Whether a peremptory writ of mandate shall be directed to issue hinges upon whether certain portions of Chapter 111, Laws Utah 1915, p. 191, and of Chapter 115, Laws Utah 1915, p. 210, are valid or invalid.   Both of said chapters, in certain respects, changed and amended Comp. Laws 1907, Section 1936, which has been in force in this State for many years. The original section reads as follows:

''The board of education shall, on or before the 1st day of May of each year, prepare a statement and estimate of the amount necessary for the support and maintenance of the schools under its charge for the school year commencing on the 1st day of July next thereafter; also the amount necessary to pay the interest accruing during such year, and not included in any prior estimate, on bonds issued by said board; also the amount of sinking fund necessary to be collected during such year for the payment and redemption of said bonds; and shall forthwith cause the same to be certified by the president and clerk of said board to the officers charged with the assessment and collection of taxes for general county purposes in the county in which the city is situated, and such officers, after having extended the valuation of property on the assessment rolls, shall levy such per cent. as shall, as nearly as may be, raise the amount required by the board, which levy shall be uniform on all property within the said city as returned on the assessment roll; and the said county officers are hereby authorized and required to place the same on the tax roll.   Said taxes shall be collected by the county treasurer as other taxes are collected, but without additional

compensation for assessing and collecting, and he shall pay to the treasurer of said board, promptly as collected, who shall hold the same subject to the order of the board of education; provided, that the tax for the support and maintenance of such schools shall not exceed in any one year six and one-half mills on the dollar upon all taxable property of said city, of which at least three mills shall not be used otherwise than for the payment of teachers, and shall not exceed one and one-half mills additional on the dollar in one year, to be used exclusively for the purchase of school sites and the erection of school buildings.''

The changes or amendments that are in question here relate to the reduction of the rate of taxation or the levies that cities of a certain class are permitted to make for public school purposes and to the classification of such cities. Section 1936, as originally passed, had once before been amended by Chapter 29, Laws Utah 1913, p. 39. The amendments in question all relate to the proviso contained in the original section. The rate was not changed by the amendment of 1913. The proviso was, however, slightly changed in other respects. As that section has been superseded, however, those changes need not be specially mentioned here. In 1915, however, the proviso was again amended, both by Chapter 111 and by Chapter 115 aforesaid. In Chapter 115 the proviso was amended to read as follows:

''Provided, that the tax for the support and maintenance of such school in cities of the first class shall not exceed in any one year six and one-half mills on the dollar upon all taxable property of said city, two and one-half mills additional on the dollar in one year, to be used exclusively for the purchase of school sites and the erection of school buildings; and in cities of the second class, the tax for the support and maintenance of such schools shall not exceed in any one year ten mills on the dollar upon all taxable property in said city.''

In Chapter 111:

''Provided, that the tax for (the) support and maintenance of such schools, and for the purchase of school sites and for the erection of school buildings in cities of the first class and in cities of the second class, having an assessment valuation

of twenty million dollars or more, shall not exceed in any one year three and one-half mills on the dollar upon all taxable property of said city; and in cities of the second class, having an assessed valuation of less than twenty million dollars, the tax for the support and maintenance of such schools, and for the purchase of school sites, and the erection of school buildings shall not exceed in any one year three and seven-tenths mills on the dollar upon all taxable property of said city.''

Chapter 111, in addition to amending Section 1936, as aforesaid, also amended a number of other sections of our school law, while Chapter 115 merely amends the proviso of Section 1936 in the particulars stated. Chapter 111 was put on its final passage on the 9th day of March, 1915, while Chapter 115 was finally passed on the 11th day of the same month; but both acts were approved by the Governor on the same day, to wit, March 22, 1915. It will thus be noticed that the rate of taxation or levy for public school purposes in cities of the first and second classes having a certain assessed valuation was reduced from not exceeding 9 mills in cities of the first class to not exceeding 3½ mills, and in cities of the second class from 10 mills to not exceeding 3½ mills, or to 3 7/10 mills according to the amount of assessed valuation in cities of the second class.

It is conceded that Ogden City is a city of the second class, and that the assessed valuation of the property in said city for 1916 is $31,510,408; that the amount that is required for the support and maintenance of the public schools, which must be raised by taxation from the assessed valuation aforesaid for 1916, amounts to the sum of $160,500; that the rate of taxation, or the levy, that is necessary to raise said amount upon said valuation is 5 1/10 mills on the dollar; that the plaintiff has complied with all the provisions of law, and has duly and properly presented the foregoing estimate to the defendants, upon whom the law imposes the duty of levying and collecting the school taxes, and has demanded that said defendants levy and collect a tax of 5 1/10 mills on the dollar of said assessed valuation; that said defendants have refused, and still refuse, to do so, for the alleged reason that they are prohibited by Chapter 111 aforesaid from making a levy

in excess of 3½ mills on the dollar upon said assessed valuation for school purposes; that a levy of only 3 5/10 mills on the dollar will not produce to exceed the sum of $110,286.77, which is wholly inadequate to maintain and support the public schools in Ogden City for the school year of nine months, but will be sufficient to maintain and support said schools for a period of only six or seven months during the year of 1916.

Plaintiff's counsel contend that there is an irreconcilable conflict between Chapters 111 and 115 with respect to the rate of taxation, that Chapter 115 was passed later in point of time than was Chapter 111, and that the former must therefore control. They, however, also contend that if it held that Chapter 115 was not passed after Chapter 111, Chapter 115 is, nevertheless, in its nature a special enactment, while Chapter 111 is a general one, and for that reason Chapter 115 must prevail over Chapter 111. Both Chapters 111 and 115 are, in a large measure, mere re-enactments of Section 1936, *supra*, and only change or amend small portions of that section. Section 1936, *supra*, in which the alleged conflict arises, is therefore re-enacted in Chapter 111, and also in Chapter 115, with the changes in the provisos which we have copied in full. Chapter 115, therefore, covers precisely the same ground, or subject, that is covered by Chapter 111, and, for reasons hereafter appearing, is no more special legislation than is Chapter 111. The mere fact that in Chapter 115 the rate is different from what it is in Chapter 111 does not make one general and the other special, although more ground may be covered in the latter than in the former chapter. But even though it were conceded that Chapter 115 is special, and that there are certain provisions in that chapter that are repugnant to similar ones contained in Chapter 111, yet that fact, standing alone, would not authorize us to declare Chapter 111 void in so far as that chapter may be in conflict with Chapter 115, as contended for by plaintiff's counsel. It is an inflexible rule of construction that in case a conflict exists between two enactments, whether enacted at the same session of the Legislature or at different sessions, the courts must, if possible, give force and effect to all the pro-

visions contained in both acts, notwithstanding the apparent conflict.

In 2 Lewis Suth. Stat. Const. (2d Ed.) Section 516, in referring to that subject, the author says:

"A statute should be so construed as to give a sensible and intelligent meaning to every 'part, to avoid absurd and unjust consequences, and, if possible, as to make it valid and effective."

See also, 1 Lewis' Suth. Stat. Const. (2d Ed.) Section 262.

Moreover, it is the duty of the courts, in construing statutes, and especially in case of conflict, to take into consideration all matters that may affect the validity of the statute.

Referring again to the same author and same volume, Section 310, it is said:

"The courts will take judicial notice of whatever may affect the validity or meaning of a statute. They will take notice of events generally known within their jurisdiction, of the history of legislation, and of the reasons urged for or against the passage of the law. They will inform themselves of facts which may affect a statute."

The foregoing text is approved by the Supreme Court of Kansas in *City of Topeka* v. *Gillett*, 32 Kan. 431, 4 Pac. 800, and in many other cases cited by the author in the foot-notes.

While, as stated before, Chapters 111 and 115 were passed at the same session and at the times stated, and approved on the same day, yet the time at which Chapter 111 should go into effect is expressly stated thus: "This act shall take effect January 1, 1916." Upon the other hand Chapter 115 went into effect under our Constitution on May 22, 1915, while, as we shall see, all those portions that were merely re-enactments always continued in effect. Chapter 111 also repeals "all sections or parts of sections in conflict with the provisions of this act." Chapter 115, so far as the same is in conflict with Chapter 111, is therefore repealed by the latter chapter. In view, therefore, that Chapter 111 did not go into effect until January 1, 1916, there really was no conflict between that chapter and Chapter 111 until that date, and when that date arrived the latter chapter was re-

pealed by the former, and therefore there never was a conflict, nor is there any now, between the two chapters. Again, if we take into consideration, as we must do, the circumstances and conditions that induced the Legislature of 1915 to adopt Chapters 111 and 115, it again becomes clear that no conflict was either intended or created.

Prior to the year 1915, and in that year, the property in this State was assessed at a valuation far below its real or cash value. There was much dissatisfaction with that method of valuation and assessment of property. Moreover, the assessed valuation of 1915 and preceding years, in some instances, was insufficient to produce the necessary amount of revenue for certain state and other purposes. In 1915 the Legislature, therefore, adopted certain measures by which it was intended, so far as possible, to compel the assessment of all property at its actual cash value, and to accomplish that purpose the Legislature, among other things, reduced the rate of taxation or the levies that could be made by the officers of the several counties, cities and other political subdivisions of this State. It was assumed that in lowering the rate the valuation or assessment of property would have to be correspondingly increased. For that reason the levies were reduced in Chapter 111 as compared with what they were permitted to be in Chapter 115. In the latter chapter the original Section 1936 was therefore amended so as to increase the school levies for the year 1915 for cities of the second class, for the reason that the rate permitted by the original section was, in some instances, deemed insufficient for that purpose. That, apparently, was the controlling, if not the only, reason why Chapter 115 was adopted and why the original Section 1936 was amended. The Legislature, therefore, assumed that when the property of this State should be assessed at its cash value, the assessed valuation would be so increased that the reduced rates fixed by it in Chapter 111 for the year 1916 and subsequent years, would be sufficient to produce the necessary revenue to maintain and support the public schools of the cities as classified in that chapter. Chapter 111, therefore, was intended to apply only after the assessed valuation of the property was increased, which was to begin with the year

1916, and for that reason that chapter was made effective only from January 1, 1916.  After that date there was no longer any necessity for Chapter 115, and therefore, so far as it was in conflict with Chapter 111, it was repealed.  That those parts that were in conflict were intended to be, and were, repealed is clearly expressed in Chapter 111.  Such parts as were not in conflict were mere re-enactments, and thus always ,were, and still are, in force and effect.  The law in that regard is well stated in 1 Lewis' Suth. Stat. Const. (2d Ed.) Section 246, in the following words:

"The re-enacted portions are continuations, and have force from their original enactment."

That all portions of Chapter 115 in conflict with Chapter 111 were repealed is equally well settled.  Referring again to the section last referred to, the author says:

"Where a statute repeals all former laws within its purview, the intention is obvious, and is readily recognized to sweep away all existing laws upon the subjects with which the repealing act deals."

The law is also well settled that in case a statute is made effective only from a future date, but in terms repeals the former law upon the subject, the repealing clause become effective only at the time the statute goes into effect.  The same author, in volume 1 aforesaid, Section 175, in stating the law upon that subject, says:

"Where the provisions of a revising statute are to take effect at a future period, and the statute contains a clause repealing the former statute upon the same ·subject, the repealing clause will not take effect until the other provisions come into operation."

In the same volume, Section 280, it is further said:

"Statutes speak from the time they take effect, and from that time they have posteriority.  If passed to take effect at a future day, they are to be construed, as a general rule, as if passed on that day and ordered to take immediate effect."

The provisions, therefore, that are common to both Chapters 111 and 115, and which are in apparent conflict, were not intended to be, nor were they, in force or effect at the same period of time, and hence there was no real conflict between

the two chapters. We are not permitted, therefore, to declare the objectionable limitations contained in Chapter 111 invalid for the reasons urged by plaintiff's counsel.

There is, however, a valid reason why the limitations and classifications of said Chapter 111 cannot **8, 9, 10** be sustained. It will be observed that said chapter classifies or divides the cities of this State into two classes:

(1) "Cities of the first class and cities of the second class with an assessed valuation of twenty million dollars or more;" (2) "all other cities of the second class having less than twenty million dollars assessed valuation."

Here, therefore, all cities of the first class and all cities of the second class having $20,000,000 or more of assessed valuation constitute one class, while all other cities of the second class having an assessed valuation of less than $20,000,000 constitute the only other class that is provided for. If there are any cities of the first class which have less than $20,000,000 assessed valuation, they are not provided for at all. For the purposes of this decision we shall assume, without deciding, that cities of the first and second class may be reclassified and placed in the same class for certain purposes. The difficulty with Chapter 111, however, lies deeper than that. In that chapter the Legislature has not only thrown together cities of different classes into one class, but has selected a most unnatural and a most artificial method or basis of classification. Courts are practically harmonious that, not only cities, but many other subjects, may be classified without contravening the constitutional provision that "in all cases where a general law can be applicable no special law shall be enacted." Article 6, Section 26, subd. 18, Const. The courts are, however, also agreed that the classification must be reasonable and natural, and not artificial or arbitrary. In referring to the question of classification, the Supreme Court of North Dakota, in *Edmonds* v. *Herbrandson*, 2 N. D. 270, 50 N. W. 970, 14 L. R. A. 725, said:

A "classification must be natural, not artificial. It must stand upon some reason, having regard to the character of the legislation."

The question is also learnedly discussed in the case of *Richards* v. *Hammer,* 42 N. J. L. 440, 441. Indeed, the case referred to from North Dakota is largely based upon the reasoning of the New Jersey case and cases cited.

Let us pause a moment to inquire whether the classification adopted in Chapter 111 in any degree conforms to the rule above stated; which is the one generally recognized and adopted by the courts? What possible relation has the assessed valuation of property to the number of school children? Without children no public schools are necessary, and it is the number of children in any city which, in a large measure at least, determines the number of school buildings and teachers that are required. The number of school children in a given city, to an extent at least, determines the amount of money that is required to support and maintain the public schools for a given school year. It requires no argument to show that the assessed valuation in a given city may have no relation whatever to the schools that are required. Indeed, it has no natural relation to the number of school children that may be in that city, and hence has no relation to the number of schools that must be supported and maintained, nor to the number of teachers that must be employed and paid, and therefore has none to the amount of money or revenue that may be necessary to maintain and support the schools in such city. It is a fact of which we take judicial notice that it always has been the legislative policy and purpose of this State to provide all the revenue necessary to carry on our public schools for a period of at least nine months in each year. Entirely apart, however, from that general policy, the same policy is clearly manifested in Section 1936 and in the different amendments of that section, including Chapters 111 and 115. The Legislature, therefore, clearly and manifestly intended to provide sufficient revenue to maintain and support the public schools of Ogden City, and of all other cities, and if it had not been for the most peculiar and arbitrary classifications and limitations that were adopted in Chapter 111, the intent of the Legislature in that regard no doubt would have prevailed. The validity of every law must, however, be tested by what may be done under it and by what its effects

may be.  The classification adopted is not only artificial, arbitrary, and wholly foreign to the subject the Legislature deals with, but it is unfair, unequal, and unjust, and does not operate uniformly upon all taxpayers who are assessed to the same extent in the different cities of the same class, nor upon the public schools in such cities.  That fact is easily demonstrated.  Ogden City, it is admitted, requires revenues amounting to $160,500 to maintain and support its public schools for a period of nine months.  It has an assessed valuation in round numbers of $31,510,000.  That valuation, under the classification and limitations adopted in Chapter 111, will only yield revenue amounting to $110,000, which is about $50,000 less than is necessary to support and maintain the public schools of Ogden City for the year 1916.  In order to obtain sufficient revenue under Chapter 111, Ogden City would have to have an assessed valuation of something in excess of $46,000,000.  Let us assume that A. and B. live in cities of the same class under Chapter 111.  A., however, lives in a city of an assessed valuation of $23,000,000, while B. lives in one of an assessed valuation of $46,000,000, and that both of those cities require the same school facilities that are required by Ogden City.  Let us further assume that both A. and B. are assessed for an equal amount, and thus, under Chapter 111, must contribute or pay an equal amount to the public school fund of the city in which each lives.  Now A., who lives in the city having the $23,000,000 assessed valuation, only obtains the benefit of about 4½ months of school, while B., who lives in a city of the same class, and who pays into the public school fund precisely the same amount that A. does, enjoys the benefits of a 9 months' school.  Again, the Legislature of this State, in Chapter 29, Laws 1911, created what is known as a "high school fund," in which all cities that support and maintain a high school up to the standard and for the time required by the state board of education may participate; that is, that fund will be distributed among all the high schools that are maintained according to the standard and for the time required by the said state board of education.  In view, therefore, that Ogden City by the classification in Chapter 111 is prevented from maintaining its high school for a

period of 9 months, which is the time required by the state
board of eductaion, it forfeits all rights to its proportion of
said state high school fund. Here, again, A. and B., who live
in cities of the same class, are differently affected, both as
taxpayers and as patrons of the high school, in their respec-
tive cities. But in addition to all that, is it not apparent to
all that one city of either the first or second class may have a
great amount of assessable property in excess of another city
of the same class? The city with the greater assessed valua-
tion may, however, not have nearly so many school children,
and therefore may not require the same amount of revenue to
maintain its public schools as the city with the lesser amount
of property. The amount of assessed valuation, therefore, has
little, if any, relation to the number of children of school age
in any particular city. The classification adopted in Chapter
111 is therefore, not only arbitrary and artificial, but it ope-
rates unequally, unfairly, and unjustly on taxpayers and
school patrons living in cities of the same class, and who con-
tribute to the public school fund in precisely the same propor-
tion. Such a classification is condemned by all the courts,
and there is no legal ground upon which it can be sustained.
While courts do not lightly interfere with the Legislature in
choosing or selecting methods of classification, yet they do not,
and may not, shut their eyes to classifications that clearly
and manifestly operate unequally, unjustly, and unfairly
upon those who come within the same class. While we disclaim
any intention or right to suggest any method of classification
to the Legislature, yet it would be easy for that body to adopt
a proper classification which would effect all cities and school
districts alike. The per capita cost of maintaining and sup-
porting schools of each city is well known. If it is desired to
limit the levy strictly to the actual cost of maintaining the
public schools, all that is necessary to do is to multiply the
number of children who attend school by the per capita cost
of maintaining the separate schools, and, in case taxes must
be levied for other purposes, add the amount for such pur-
poses to the per capita cost, which, when added, will give
the total amount of revenue that must be raised by taxation.
In case there are other sources of revenue that can be applied

for school purposes, those, of course, must be deducted. When
the per capita cost is ascertained and the assessed valuation is
known, it is an easy matter to fix the limit that should be
levied.   The Legislature need, however, not be governed by
the per capita cost of any city or of a number of cities, but
by comparison may fix a standard cost which should not be
exceeded.   The Legislature may thus, by law, provide that
no city shall levy taxes for public school purposes exceeding
the standard fixed by law as aforesaid.   The Legislature may,
however, adopt any limitation it sees fit; but in doing so the
law must be so framed as to operate with substantial equality
and uniformity upon all taxpayers and school patrons who
come within the same class.   The law if it is discriminatory
in that regard is not only abhorent, but is, as it should be,
without force or effect.

By what we have said we do not mean to be understood as
holding, nor do we hold, that the Legislature may not fix any
limitation they see fit upon the amount of taxes that the cities
may levy and collect for certain purposes, but what we do
hold is that where classifications are adopted and limitations
are imposed, the law must operate and affect all coming with-
in the same class substantially alike.   That portion of Section
1936, as amended by Chapter 111, which relates to the classi-
fication of the several cities, and which limits the levy to $3\frac{1}{2}$
mills on the dollar of the assessed valuation of such cities,
must, for the reasons stated, be held void and of no effect.

The only question that remains to be determined is: What
is the legal effect of declaring the provision aforesaid invalid?
It is now well settled that in case it is found that an entire
statute, or only a particular provision of a statute, is
invalid for any reason, and the statute so found invalid
has expressly or by necessary implication repealed
another statute or provision upon the same subject, so much
of the former statute which was superseded by the invalid
portion of the later one is not repealed, but continues in full
force and effect.   Says the author of Lewis' Suth. Stat. Const.
(2d Ed.) Section 246, a statute is not repealed ''by the re-
pugnant spirit of another; nor for conflict with an unconsti-
tutional provision.''   In view that Chapter 111 repeals all

sections and all parts of sections in conflict with said chapter, and in view that we have held the classification and the limitation of $3\frac{1}{2}$ mills on the dollar levy void, therefore, the limitation fixed for cities of the second class, within which the City of Ogden comes, in Chapter 115 was not repealed and is still in force. That limitation is fixed at not to "exceed ten mills on the dollar" of the taxable property in the city, and that provision will remain in force until it is repealed by a valid enactment.

In conclusion we desire to add that, while courts in case a statute is plain and unambiguous cannot, and do not, consider consequences in arriving at a conclusion, yet in this case we have had less hesitancy in arriving at the foregoing conclusion for the reason that such a result can, in no way, produce any harm or inconvenience, and for the further reason that the Legislature will meet in regular session early in January of next year, and may thus adopt such a law as will operate equally upon all those coming within the same class.

For the reasons stated, a peremptory writ of mandate as prayed for should issue. Such is the order.

STRAUP, C. J., and McCARTY, J., concur.