## BECKER PRODUCTS CO. v. STATE TAX COMMISSION et al.

No. 5735.   Decided May 26, 1936.   (58 P. [2d] 36).

*DeVine, Howell & Stine,* of Ogden, for plaintiff.

*Ned Warnock,* of Salt Lake City, for defendants.

MOFFAT, Justice.

The facts, in so far as facts are material in this case, are not in controversy.   The question of law submitted arose out of a controversy as to the rate of excise tax to be paid

under the statute relating to the manufacture and sale of beer. The Becker Products Company, a corporation, was licensed under chapter 10, Laws of Utah 1933, Second Special Session, by the state tax commission of Utah to manufacture and sell beer. Under that statute, section 46-0-53, an excise tax was levied. Under the Laws of Utah, 1935, c. 43, § 95, the rate of tax levy was changed. This change is what brings this action here, but the amount involved in that issue is lost in the law problem submitted.

The plaintiff corporation was licensed under and paid taxes according to the provisions of chapter 10, Second Special Session Laws of Utah 1933, until the 31st day of March, 1935. The regular session of the Legislature of the state held in 1935 enacted the "Liquor Control Act," contained in chapter 43, Laws of Utah 1935, and made it effective on approval. The "Liquor Control Act" was approved March 25, 1935. The Becker Products Company took advantage of the reduced tax rate under the 1935 law and paid taxes on beer manufactured during the months of April and May, 1935, and computed the tax accordingly. The tax commission upon receipt of the returns made by plaintiff sent the company notice of the claimed deficiency in the tax and proposed an assessment in an additional amount, claiming the provisions of chapter 10 of the Second Special Session Laws to be in force until the issuance of the proclamation of the Governor provided for by section 209, Liquor Control Act of 1935.

The plaintiff did not include as taxable items the beer manufactured for export and did not pay the tax thereon. The tax commission made a detailed assessment and claim for additional taxes and penalties. The company then petitioned the commission for a hearing, which was had. The commission adhered to the assessment levied by it upon the ground that the provisions of chapter 10, Second Special Session Laws of 1933, were continued in force until June 1, 1935, when the Governor's proclamation was issued.

The controversy is brought here for review. The sole question here for consideration is: Does section 46-0-53, Second Special Session Laws of 1933, or the Liquor Control Act (section 95, chap. 43, Laws Utah 1935, which became effective on March 25, 1935, the date of approval), control, or was the effective date of the 1935 act postponed until June 1, 1935, the date the Governor issued his proclamation pursuant to section 208 of the Liquor Control Act? The three sections of the 1935 Liquor Control Act, over which the foregoing question arose, are sections 208, 209, and 210. They read as follows, including the date of approval:

Sec. 208: "As soon as two or all of the members of the commission shall be appointed and shall qualify, it shall be the duty of the commission to proceed diligently to carry out the provisions of this act, and to certify to the governor, as soon as may be, the fact that it is ready to open one or more liquor stores. Upon receipt of such certificate the governor shall proclaim that he has received it, and thereupon, and not earlier, all outstanding permits and licenses theretofore issued by the commission shall become effective."

Sec. 209: "When the proclamation provided for in the preceding section shall be made, title 46 of the Revised Statutes of Utah, 1933, chapter 35 of the Laws of Utah, 1933, and chapter 10 of the Laws of Utah, 1933, Second Special Session, and all other acts or parts of acts in conflict with the provisions of this act to the extent of such conflict shall stand repealed."

Sec. 210: "There being an emergency, this act shall take effect on approval."

"Approved March 25, 1935."

The arguments submitted are based entirely upon the language used in the sections above quoted, and the exigencies, circumstances, and difficulties thought to be created by those sections. No case construing or anlayzing such a problem is submitted by either side, nor have we found a case in which the same situation has been discussed. We are therefore put to the construction of the law under general rules relating to such problems.

Section 209, supra, is a repealing section. Section 210 is the declaration of the effective date of the whole Liquor

Control Act. By section 210 it is declared that, "There being an emergency, this act shall take effect on approval." The act was approved March 25, 1935. That the whole Liquor Control Act became operative and effective on the 25th day of March, 1935, is not open to question. Section 209 is not a saving clause. It provides a proceeding and when certain events happen, not only the titles and chapters specifically mentioned are repealed, but also "all other acts or parts of acts in conflict with the provisions of this act to the extent of such conflict shall stand repealed." We there fore have the situation of the Liquor Control Act (chapter 43, Laws 1935) being effective and also other laws, previously passed, unrepealed until the date making the repeal effective by the proclamation of the Governor.

That there are conflicts was recognized by the Legislature, both from the facts of expressly designated repeal and from the declaration of further repeal to the extent of conflicts. If the conflicts were limited to the sole matter of the rates of excise taxes on beer to be levied and collected, a reconciliation might be attempted, but with small chance of success. But here the Liquor Control Act covers the whole field of liquor control with the establishment of a complete and new administrative organization; in fact, an entire change of system of liquor control.

The rule of construction that in case a conflict exists between two enactments, whether enacted at the same or different sessions of the Legislature, "the courts must, if possible, give force and effect to all the provisions contained in both acts, notwithstanding the apparent conflict" (*Board of Education of Ogden City* v. *Hunter*, 48 Utah 373, 159 P. 1019, 1021), becomes inapplicable. Both laws were in existence. A reconcilement of them is not suggested nor argued. Plaintiffs position is that chapter 43, Laws of 1935 (Liquor Control Act), is controlling, while defendants' position is that chapter 10, Second Special Session Laws of 1933, controls the situation. Article 5 of chapter 43 (section 83 et seq.) contains more sections, covers more and dif-

ferent subject-matters, although both relate to "beer," than does chapter 10 of the 1933 Second Special Session Laws. The former contains thirty-one sections, while the latter contains but eighteen amended or re-enacted sections. Under the provisions of section 46-0-53, said chapter 10, the excise tax was $1.20 per barrel of thirty-one gallons of beer manufactured or sold within the state and 60 cents per barrel of like quantity manufactured or sold for use without the state. The "beer" referred to was defined by another section to be an alcoholic fermentation, etc., containing in excess of one-half of 1 per centum of alcohol by volume and not more than 3.2 per centum of alcohol by weight.

The Liquor Control Act classified "beer" according to its alcoholic content as any beverage containing not less than one-half of 1 per centum of alcohol by weight. "Heavy beer," according to alcoholic content, was defined as beer containing more than 3.2 per centum of alcohol by weight, and "light beer" as containing not more than 3.2 per centum of alcohol by weight. "Beer" was also defined as to include "ale," "stout," and "porter" (section 3). The rate of tax is 80 cents per barrel on "light beer" and $1.60 per barrel on "heavy beer," and, under a proviso, "such tax shall not be imposed on beer exported from the state of Utah." Section 95. Other situations as incompatible might be indicated.

The two statutes are not reconcilable and may not both be given force and effect. Though the repeal of chapter 10 was delayed until the issuance of the Governor's proclamation, the manifest intention of the Legislature was that the whole of chapter 43, Laws 1935, containing 210 sections, should at once become effective. Section 210 expressly makes it so, and declares an emergency; section 5 requires the Governor "immediately after the effective date" to appoint the liquor control commissioners, and by section 208, as soon as the commissioners are appointed and qualify, "it shall be [their] duty to proceed diligently to carry out the provisions" of the act.

"If two inconsistent acts be passed at different times, the last," said the master of the rolls, "is to be obeyed, and if obedience cannot be observed without derogating from the first, it is the first which must give way. Every act of Parliament must be considered with reference to the state of the law subsisting when it came into operation, and when it is to be applied; it cannot otherwise be rationally construed. Every act is made, either for the purpose of making a change in the law, or for the purpose of better declaring the law, and its operation is not to be impeded by the mere fact that it is inconsistent with some previous enactment." Potter's Dwarris on Statutes and Constitutions, p. 155.

"The effect of an emergency clause upon acts passed by the Legislature is to cause the act to take effect at once upon its approval by the Governor and to prevent its not going into effect until after the expiration of the period otherwise prescribed by the Constitution. What may be deemed an emergency for this purpose is purely a legislative question." *Cameron* v. *Stevens*, 121 Or. 538, 256 P. 395, 397, citing 1 Lewis' Sutherland on Statutory Construction (2d Ed.) § 176.

It is recognized that statutes in pari materia, although conflicting, should, if reasonably possible, be so construed as to establish a harmony with each other. The later statute in the instant case was manifestly intended to cover the whole subject-matter of liquor control. Neither ■ the whole Liquor Control Act nor the unreconcilable, conflicting provisions thereof may be suspended or delayed in operation because the delayed effective date of the repealing clause therein, keeping alive certain provisions of the law, is postponed until the effective date of the repealing provision, made dependent upon the development of events growing out of the law itself. The situation is much like the story of the board of school trustees who resolved to build a new school house out of the bricks of the old school house, and that the old school was not to be torn down until the new house was built.

The rule of construction controlling the situation before us is that where there is an unreconcilable conflict the latest enactment will control. It was held in ■ *Nelden* v. *Clark*, 20 Utah 382, 59 P. 524, 526, 77 Am. St. Rep. 917, that:

"If the later act covers the subject-matter of the former, and makes different provisions, which are contradictory and inconsistent with it, so that the two acts cannot stand together in harmony, then it may be said the one repeals the other in so far as it is inconsistent and contradictory."

In the instant case, the later statute not only covers all the subject-matter of the former statute, but more and in detail, and by different provisions and methods of procedure and administration provides the manner of administration of and the rules and regulations relating to the whole matter of intoxicating liquors. The last expression of the legislative will is the law in cases of conflicting provisions that are repugnant or unreconcilable. *State* v. *Courtney*, 27 Mont. 378, 71 P. 308, is a liquor license case, in some of its aspects analogous to the case before us.

The tax commission was therefore without authority to levy the additional assessments and penalties under the old law, section 46-0-53, chap. 10, Second Special Session Laws of Utah 1933. Such action of the state tax commission is therefore set aside, vacated, and annulled.

ELIAS HANSEN, C. J., and FOLLAND and EPHRAIM HANSON, JJ., concur.

WOLFE, Justice.

I dissent. I think the prevailing opinion confuses the difference between the effective date of an act and the operative date. The date when a law becomes effective is when it has the force of law. But when the law itself says that certain of its provisions shall not be effective (operative) until a certain contingency, those provisions, or in this case licenses granted under those provisions, do not become operative until that contingency or date. The law must become effective in the sense of becoming a law so that its

force as a law will effectuate the operativeness of the provisions which do not become operative until the future. Concretely, certain provisions of the law do not become operative until January 1st. The law may be effective as a law before that, because, if not, the very provision specifying for a future operation of certain provisions would not be effective. Even a law such as chapter 10, Second Special Session Laws of Utah 1933, which did not become operative as a whole until January 1, 1934, and then only if the Prohibition Amendment to our Constitution was repealed, was effective on August 8th, the date of approval, in so far as it provided for the operation on January 1, 1934.

In this case "all outstanding permits and licenses" issued by the commission and held in abeyance until the proclamation of the Governor were not effective until such proclamation. Consequently, the Becker Products Company could not have been operating under such license until the Governor's proclamation on June 1, 1935. What license was it operating under? Unless illegally operating, it must have been under chapter 10, Second Special Session Laws of Utah 1933, section 46-0-52, which was repealed at the time of the Governor's proclamation. If this was not repealed until the Governor's proclamation on June 1st, it was in effect. The prevailing opinion is in accord in this. The excise tax levied by section 46-0-53, chapter 10, Second Special Session Laws 1933, was a tax for the privilege of manufacturing beer under section 46-0-52 of that same act. On the other hand, after June 1, 1935, the Becker Products Company was operating under article 5 of chapter 43, Laws of Utah 1935 (Liquor Control Act), and especially sections 87 and 90 of said chapter, and the excise tax imposed for the privilege of manufacturing beer was 80 cents a barrel by section 95 of the same chapter 43. In such case the excise tax imposed by that law was for the privilege of manufacturing as it was conferred by that particular act. Therefore, the payment of the excise tax of 80 cents a barrel for domestic consumed beer was the condition under which the plaintiff could

manufacture beer under the license which became effective June 1st and the excise tax of $1.20 a barrel was the excise tax which it was required to pay under its privilege to manufacture under the law passed at the Second Special Session of 1933. They were commensurate, corresponding, and coextensive each with the license to do the business which each impost purported to tax. The excise taxes peculiar to each were coincidental with, attached to, and were a condition under which a brewer operated under that particular law.

The Liquor Control Act became effective March 25, 1935. Some of its provisions did not become operative until June 1, 1935. Included among these provisions was that pertaining to the 80 cents per barrel excise tax which went with, and attached to the license provision of the same act. On the same date—June 1st—the old Beer Act, including the license and excise provisions, was repealed. It seems to me incongruous to hold that the license features of chapter 10, Laws 1933, Second Sp. Sess., stand in effect until June 1, 1935, so as to articulate exactly with the date of effectiveness of the new license, but that there were two excise tax rates in effect which were inconsistent, when it is quite plain to me that each excise tax, being on the business of manufacturing beer under the particular license which permitted it, must necessarily come into being coincidental with the coming into being of the license and accompany such license as a concomitant thereof. Otherwise, we hold that the Legislature provided for the death of one license by June 1, 1935, and the birth of its successor on the same date, but that between August 8, 1933, and June 1, 1935, there were two different excise taxes in effect which were inconsistent and that the 80 cents a barrel rate being later than the $1.20 a barrel rate must prevail. I think the $1.20 rate persisted until its date of repeal on June 1, 1935, coincidental with the license which granted the privilege of doing the business on which this rate was an impost and which also expired June 1, 1935; that the new rate of 80 cents began on June

1st coincidental to the new license which was effective the same date and which granted the privilege of doing business which this 80 cents rate was a tax upon.

For the above reasons, I dissent.