JOSEPH H. GAINER *et al. vs.* JOHN C. DUNN *et al.*

JUNE 5, 1908.

PRESENT: Douglas, C. J., Dubois, Blodgett, Johnson, and Parkhurst, JJ.

(1) *Quo Warranto. Board of Canvassers. Power of Court to Review Finding of Board on Questions of Law.*

Under the provisions of Cons. R. I. art. XII of Amendments, § 1, providing, that "The supreme court shall have final revisory and appellate jurisdiction upon all questions of law and equity," the court will consider questions of law, arising in the determination by the board of canvassers and registration of the city of Providence of the result of the election of members of the city council of the city of Providence under Pub. Laws cap. 363, properly raised in *quo warranto* proceedings.

Rule in *Sherry* v. *O'Brien,* 22 R. I. 319, applicable as the constitution then stood, relaxed.

(2) *Decision of Board on Facts, Final.*

Decision of court, reported in 29 R. I. p. 232, that the decision of the board upon questions of fact is final, and not subject to review by the court, affirmed.

(3) *Ballots. Marking Ballots.*

Under the provisions of Gen. Laws cap. 11, § 38, as amended by Pub. Laws 1229, ballots in which the proper X mark had been placed in the circle at the head of the column, no cancellation being made of any name in the column under the circle thus marked, but on which cross marks also appeared against the names of other candidates for the same offices, there being no mark in any other circle on the ballot, are properly counted for each of the candidates in the column above which the X mark was placed.

PETITION IN EQUITY in the nature of *quo warranto*. Heard on petition for re-argument. Dismissed.

BLODGETT, J.   Upon the filing of the opinion in this case the petitioners moved for a re-argument as to certain constitutional questions which were not set forth in their petition, contained in their brief, or urged at the hearing, and the court has granted their motion.   They now urge that the provisions of section 1 of article XII of amendments to the constitution, adopted November 3, 1903, and subsequent to the passage of chapter 363 of the Public Laws, has enlarged the rights of the petitioners and extended the powers of the court in such wise that they are constitutionally entitled to have the questions of law arising in the determination by the board of canvassers and registration of the result of the election in question reviewed and finally settled by this court.

The constitutional provision in question is as follows: "SECTION 1.   The supreme court shall have final revisory and appellate jurisdiction upon all questions of law and equity."

(1)    While decisions are not wanting which hold that questions similar to those in the present proceeding are questions of fact (*Sheehan* v. *Mayor of Manchester*, 68 Atl. 872; *Attorney-General* v. *Sands*, 68 N. H. 54), and while the proceeding in this case, as often happens in other cases of *quo warranto*, depends upon the application of the law to questions of fact, and the legal questions have not been formally raised upon the record below, we are of the opinion that we should consider such questions of law as are clearly presented, to the end that the full beneficial effect of this proceeding in *quo warranto*, involving public rights as well as private interests, may be secured.

Under the constitutional provisions now existing we are of the opinion that the rule laid down in *Sherry* v. *O'Brien*, 22 R. I. 319, decided December 24, 1900, and which was applicable as the constitution then stood, should be relaxed so as to permit questions of law properly raised in *quo warranto* proceedings of this nature to be considered by this court.

(2)    It is conceded by the petitioners on their brief that "Decisions of the board as to matters of fact would not come within the

constitutional objection here raised." As to these questions we reaffirm our former opinion that the decision of the board of canvassers and registration is final, and not subject to review by this court. The only question of law which is presented is contained in the contention of the petitioners that the marks upon certain ballots counted for the respondents were, as matter of law, such marks as rendered it impossible to determine for what candidates they were cast, and that they should accordingly have been rejected for all candidates. The petitioners do not aver the number of such ballots, and there is no evidence before us either, from the record of the board of canvassers and registration or given at the hearing, which enables us to determine their number, or whether, as averred in the petition, they would change the result if deducted from the number credited to the respondents. Inasmuch, however, as it did appear, from the testimony of the clerk of the board, that all the ballots which are questioned by the petitioners were so counted for the respondents, we proceed to a consideration of the legality of such action. As we are of the opinion that they were properly counted for the respondents, it becomes in a sense immaterial in this case whether they were greater or less in number.

So much of section 38 of chapter 11 of the General Laws, as amended by chapter 1229 of the Public Laws, as applies to this case is as follows: "If he desires to vote for all the candidates of one political party he shall place a cross (X) within the circle above the name or designation of that party. In case he desires to vote for a candidate whose name is not printed under the circle in which he has marked, he shall cancel the name of the candidate in such column for whom he refuses to vote by drawing a line through such name, and shall vote for the candidate of his choice by marking a cross (X) in the square opposite the name of the candidate of his choice, or by writing in the right-hand column prepared for that purpose, under the proper title of the office, the name of the person for whom he desires to vote. In such case the vote shall be counted for the candidate against whose name a cross has been so marked, or whose name has been so inserted in the right-hand column,

and such ballot shall not be counted for the candidate for the same office whose name is cancelled. When a voter has placed a cross (X) in any one circle, and has not made any mark in any other circle, such cross (X) shall be counted as a vote for each of the candidates in the column above which it is placed, except for those candidates whose names have been cancelled."

(3)   The ballots in question were ballots in which the proper X mark had been placed in the circle at the head of the column and on which cross marks also appeared against the names of other candidates for the same offices, no cancellation being made of any name in the column under the circle thus marked, and there not being any mark in any other circle on the ballot. In such case the law provides as follows: "When a voter has placed a cross (X) in any one circle, and has not made any mark in any other circle, such cross (X) shall be counted as a vote for each of the candidates in the column above which it is placed, except for those candidates whose names have been cancelled."

Under a statute substantially similar in provisions to our own statute, except the requirement that the cross mark be placed at the left of the name instead of at the right of the name, it was held, in *Vallier* v. *Brakke*, 7 So. Dak. 343, p. 353, as follows: "It will be observed, from an examination of these sections, that the elector may adopt either of four methods in designating the candidates for whom he desires to vote.   First. He may make a cross in the circle at the head of a party ticket, and in this manner vote the entire party ticket.   In such case that ticket is full and complete, and constitutes his ticket. Second.   He may make a cross in the circle at the head of the party ticket, and may erase on that party ticket, the names of the candidates for whom he does not desire to vote, and not supply the place of the erased name or names.   He then votes the party ticket, except as to the candidates whose names are erased, and as to these the ticket is not filled.   Third.   When the elector has made a cross in the circle at the head of the party ticket, and erased the name of one or more candidates thereon, he may fill out his ticket in whole or in part by placing a cross to the left of the name of candidates on other tickets,

thus making his ticket to consist of the names not erased upon his own party ticket, and the places of those erased filled by the name or names of candidates on other tickets. Fourth. If the elector chooses, he may omit the cross in the circle at the head of any party ticket, and make up his ticket by placing a cross to the left of the names of such candidates as he desires to vote for upon any ticket on the ballot, the candidates so voted for representing different offices on the ticket. The statute having prescribed the manner in which the elector may designate by marks upon his ballot the candidate for whom he intends to vote, and declared the effect of such marks, neither the judges of election nor the courts are authorized to go beyond those marks in order to ascertain the voter's intention. When, therefore, the elector makes a cross in the circle at the head of a ticket, and erases no name thereon, the law declares it shall be counted for the party ticket 'throughout,' and no cross or mark on any other ticket can be resorted to to defeat that intention.

"The learned counsel for the respondent contends that a cross placed to the left of a name on the opposite ticket, although the party ticket has the cross in the circle at the head of the same, and the name on that party ticket is not erased, raises a doubt as to the intention of the voter, which should be resolved either in favor of the candidate who has the cross to the left of his name, or the vote should not be counted for either candidate. But we cannot agree with counsel in this contention. The effect of such a marking of a ballot having been declared by the legislature to be a vote 'throughout,' for the party ticket, it is not competent for the court to find any other intent."

The court further observes, on page 360, as follows: "There was much discussion on the argument and in the briefs of counsel as to the duty of judges of election and courts to carry out the intention of the voter. This is true to a certain extent; but, as the legislature has required the elector to express his intention by certain well defined markings upon his ballot, his intention must be determined by these markings, and not by the uncertain and undefined ideas of the judges of election,

or by the courts, as to his intention. The legislature has clearly and precisely defined the manner in which the elector may designate the candidates for whom he desires to vote, and has prescribed definite and fixed rules to govern the voter in designating such candidates. As before stated, the system is simple, and there is no difficulty in the elector's complying with the rules. In our view, it is neither the duty of the judges of election nor the courts to fritter away the benefits of the system by strained efforts to get at the intention of the voter in any manner other than by following the rules prescribed by the legislature. If the elector does not take interest enough in his vote to follow these simple and easily understood rules, he can complain of no one if his vote is not counted. A system so simple and plain, and which can be comprehended by any elector of ordinary intelligence in a few minutes, must be followed. There can be no excuse for not following it." And see *McKittrick* v. *Pardee*, 8 So. Dak. 39, and *Church* v. *Walker*, 10 So. Dak. 90, 94.

The change effected by chapter 1229, Public Laws, was from a normal method of voting for individual names to a normal method of voting for groups or collections of names, and if the voter desires to vote for some candidates in one column of party candidates and also for some individuals in another column, if he uses the cross in the party circle at all he must do three things, before depositing his ballot. 1. He must mark a cross in the circle at the head of the column. 2. He must cancel the name or names of candidates in that column for whom he does not desire to vote. 3. He must mark a cross in the square at the right of the names of the candidates for whom he wishes to vote in the place of the names so cancelled, or must write the names of such candidates in the blank column.

We find no error of law in the action of the board of canvassers and registration, and the petition must accordingly be dismissed.

*John W. Hogan and Philip S. Knauer*, for petitioners.
*Walter H. Barney and Frank H. Wildes*, for respondents.