## BOARD OF EDUCATION OF CARBON COUNTY SCHOOL DIST. v. BRYNER et al.

No. 3552.   Decided October 11, 1920.   (192 Pac. 627.)

1. STATUTES—ORDINARY MEANING OF WORDS SOMETIMES EXPANDED OR RESTRICTED TO RECONCILE CONFLICTING PROVISIONS. The same words, especially if found in different statutes, may not always have the same effect, and in order to determine the purpose and intention of the lawmakers and to harmonize conflicting provisions where such occur, it at times becomes necessary for the courts to expand or to restrict the ordinary and usual meaning of words, phrases, or clauses found in a particular section or statute.

2. STATUTES—EVERY WORD OR PHRASE MUST BE GIVEN SOME EFFECT. Every word and phrase must be given some force and effect if possible, though the effect of the particular section or statute may thereby be enlarged or restricted as the case may be.

3. STATUTES—HISTORY OF STATUTE AND PURPOSE OF ENACTMENT

CONSIDERED.   When the language is ambiguous and doubtful, and there is doubt whether it should be applied in accordance with its ordinary meaning, or whether it should receive an enlarged or restricted construction, it is the court's duty to look beyond the statute if by doing so it can better determine the intention and purpose of the lawmakers, and if necessary, to inquire into the history of the particular statute and consider the general purpose of the lawmakers in passing laws on a particular subject, particularly where different sections or provisions relating to the same subject-matter are conflicting or ambiguous.

4.   SCHOOLS AND SCHOOL DISTRICTS—TAX FOR SCHOOL DISTRICT OF FIRST CLASS NOT LIMITED TO 7 MILLS ON DOLLAR.   Laws 1911, chapter 135, providing that the tax for the "support and maintenance" of schools shall not exceed five and one-half mills on the dollar, and shall not exceed one and one-half mills additional on the dollar to be used exclusively for the purchase of school sites and erection of school buildings, but that board of education in county school district of the first class shall, on specified date, furnish board of county commissioners an estimate in writing of school funds needed for ensuing year for payment of teachers, expenses of county institute, and compensation of superintendent of schools, to serve as basis for county school tax levy, did not limit school tax for districts of the first class to seven mills on the dollar, in view of the legislative history of such statute and practical construction placed thereon, and Comp. Laws 1917, sections 4597 et seq. and 4624.[1]

Original application for writ of mandamus by the Board of Education of Carbon County School District of the State of Utah against Albert Bryner and others, County Commissioners of Carbon County, Utah, and others.

WRIT ISSUED.

*Price & Fouts,* of Price, for plaintiff.

---

[1] *Woodcock* v. *Board of Education,* 55 Utah, 458, 187 Pac. 181; *Board of Education* v. *Hunter,* 48 Utah, 373, 159 Pac. 1019; *Board of Education* v. *Hanchett,* 50 Utah, 289, 167 Pac. 686; *Board of Education* v. *Stillman,* 55 Utah, 125, 184 Pac. 159; *Board of Education* v. *Smith,* 55 Utah, 124, 184 Pac. 160.

*B. W. Dalton,* of Price, for defendants.

FRICK, J.

This is an original application to this court by the board of education of Carbon county school district, hereinafter called plaintiff, for a writ of mandate to require the defendants, as the board of county commissioners of Carbon county and the other defendants as officers of said county, hereinafter styled defendants, to levy a tax for school purposes in accordance with the estimate proposed and submitted by plaintiff as required by law.

The application is based on chapter 135, Laws Utah 1911, and especially on the section designated 1891x27 of that chapter, which, so far as material here, reads as follows:

"The board of education shall, on or before the first day of May of each year, prepare a statement and estimate of the amount necessary for the support and maintenance of the schools under its charge for the school year commencing on the first day of July next thereafter, and for the purchase of school sites and the erection of school buildings, also the amount necessary to pay the interest accruing during such year, and not included in any prior estimates, on bonds issued by said board; also the amount of sinking fund necessary to be collected during such year for the payment and redemption of said bonds; and shall forthwith cause the same to be certified by the president and clerk of said board to the officers charged with the assessment and collection of taxes for general county purposes in the county in which the district is situated, and such officers, after having extended the valuation of property on the assessment rolls, shall levy such per cent. as shall, as nearly as may be, raise the amount required by the board, which levy shall be uniform on all property within the said district as returned on the assessment roll, and the said county officers are hereby authorized and required to place the same on the tax roll. * * * Said taxes shall be collected by the county treasurer as other taxes are collected, * * * and he shall pay to the treasurer of said board, promptly as collected: * * * Provided, that the tax for the support and maintenance of such schools shall not exceed in any one year five and one-half mills on the dollar upon all taxable property of said district; and shall not exceed one and one-half mills additional on the dollar in one year, to be used exclusively for the purchase of school sites and the erection of school

buildings, but in case any funds collected for support or mainte-
nance are not used within the school year for which they were
raised, they may be used for building purposes; *provided, fur-
ther, that the board of education in each county school district of
the first class shall also, on or before the first Monday in May of
each year, furnish the board of county commissioners an estimate
in writing of school funds needed in their districts for the ensuing
year for the payment of teachers, of expenses of the county insti-
tute, of compensation of the superintendent of schools,* which esti-
mate shall be taken by the board of county commissioners, as re-
quired by section 1864, Compiled Laws of Utah 1907, or in lieu
thereof when there is no county superintendent, as a basis for the
county school tax levy provided for in section eighteen hundred
and sixty-five, Compiled Laws of Utah 1907." (Italics ours.)

The plaintiff relies especially on the words we have
italicized.

Section 1864, referred to in the foregoing quotation, reads
as follows:

"The county superintendent shall, on or before the first Monday
in May of each year, furnish the board of county commissioners
an estimate in writing of the amount of school funds needed for
the ensuing year."

That section was repealed in 1915 (Laws Utah 1915, p. 98).

It will be observed that the subject-matter of section 1864
is contained in what we have quoted from section 1891x27,
supra, and has no application here. It will therefore not be
noticed further.

The plaintiff sets forth all the necessary facts in its ap-
plication to which the defendants have interposed a general
demurrer. The plaintiff in substance alleges that, in order
to raise sufficient funds to carry on the schools of Carbon
county school district for the full school year of nine months,
it is necessary that a tax of eight and five-tenths mills on the
dollar be levied on all of the taxable property within Carbon
county, and within said school district, the boundaries of
which are coterminous with the boundaries of the said
county. The defendants, in support of their demurrer, con-
tend that they are prohibited from levying any amount of
taxes in excess of seven mills on the dollar.

Counsel for plaintiff concede that according to the express

terms of the statute (section 1891x27) there is a limitation of five and five-tenths mills "for the support and maintenance of schools" and a further limitation of one and five-tenths mills (making seven mills in all) for "school sites and the erection of school buildings," but they insist that the statute provides for an additional levy in what is said in that portion of the section we have italicized. In view of the language of the statute, that the levy "for the support and maintenance of schools" shall be limited to five and five-tenths mills, under ordinary circumstances, we should feel impelled to hold that the several items contained in the portion of the section we have italicized, and on which plaintiff's counsel rely, are all included within the term "for the support and maintenance, of schools." Indeed, we have held to that effect in the case of *Woodcock* v. *Board of Education,* 55 Utah, 458, 187 Pac. 181, where the statute did not contain the italicized words, however. The doctrine is, however, also recognized that the same words, especially if found in different statutes, may not always have the same effect. It follows that in order to determine the intention and purpose of the lawmaker, and to harmonize conflicting provisions where such occur, it at times becomes necessary for the courts to expand or to restrict the ordinary and usual meaning of words, phrases, or clauses found in a particular section or statute. In that connection it is also necessary to observe the cardinal rule of construction that every word and phrase must be given some force and effect if possible, and this notwithstanding the fact that in doing so the effect of the particular section or statute may thereby be enlarged or restricted as the case may be. When, therefore, the language of a section or statute is ambiguous and doubtful, and on reading the language there is doubt whether it should be applied in accordance with its ordinary and usual meaning or whether it should receive an enlarged or restricted construction and effect, it is the duty of the courts to look beyond the statute if by doing so they can better determine the intention and purpose of the lawmakers. Moreover, as a means of ascertaining the true

intention of the lawmakers, it may also be necessary      3
to inquire into and scan the history of the particular
statute in question, and in connection therewith consider the
general purpose of the lawmakers in formulating and passing
laws upon a particular subject, and that is peculiarly true
in cases where different sections or provisions relating to the
same subject-matter are conflicting or ambiguous.  All of
the foregoing rules must likewise be considered where, as
here, the lawmakers have changed from one system of school
government to another.

With the foregoing observations in mind let us very briefly
trace the history and purpose of section 1891x27, supra, and
cognate sections.  School districts of the first class were first
created by chapter 107, Laws Utah 1905.  It is in that chap-
ter that section 1891x27 was first adopted.  It was passed so
as to make the law conform to the county school districts of
the first class which were created by that act.  In that sec-
tion, after requiring the boards of education of the several
county school districts to furnish an estimate to the county
commissioners, as is the case in the present form of section
1891x27 which we have quoted, the language which we have
italicized is also incorporated.  The same section was carried
forward into Comp. Laws Utah, 1907, as section 1891x27.
As we have seen, the section in its present form is found in
chapter 135, Laws Utah 1911, as quoted herein.  In all of
the different amendments of the section, however, the limita-
tions are the same, except that in one instance the limitation
is a little less, but the language we have italicized is sub-
stantially the same.  In 1913 (chapter 96, Laws Utah 1913)
the law was amended so as to fix an arbitrary property limita-
tion, which limitation was enlarged in 1915 (Laws Utah 1915,
page 195).  The limitations there made were, however, held
invalid by this court in the case of *Board of Education* v.
*Hunter,* 48 Utah, 373, 159 Pac. 1019; *Board of Education*
v. *Hanchett,* 50 Utah, 289, 167 Pac. 686; *Board of Educa-
tion* v. *Stillman,* 55 Utah, 124, 184 Pac. 159, and *Board of
Education* v. *Smith,* 55 Utah, 125, 184 Pac. 160.  While the
two cases first referred to applied only to cities of the first

and second class, the two cases last referred to applied to county school districts of the first class the same as the case at bar. In neither of those cases, however, was it directly held that the limitation of seven mills cannot be exceeded. The question was, however, not squarely presented in either one of those two cases, and hence was not decided. As before stated, in 1905 county school districts of the first class were created, and by various changes substantially the same system has prevailed to this day. Under the law as it was first enacted a county school district of the first class could be created only in case the county had a certain number of children of school age, to wit, 3,000 or more. The number was reduced from time to time until in 1915, when, in chapter 78, Laws Utah 1915, it was provided, ''Each county within the state shall constitute a county school district of the first class.'' It was in that chapter that the limitations which were held invalid in the case of *Board of Education* v. *Stillman,* supra, are found. It should be observed, however, that in that chapter the language we have italicized in the excerpt from section 1891x27, supra, is also found. The law respecting the creation of county school districts of the first class is now found in Comp. Laws Utah 1917, in section 4597 et seq. As the law now stands, and as it is found in Comp. Laws Utah 1917, the words we have italicized are omitted from section 1891x27 which now constitutes section 4624 of Comp. Laws Utah 1917. It will be observed, therefore, that the language we have italicized remained as an integral part of section 1891x27 from the time county school districts of the first class were first created until in 1915 (Laws Utah 1915, page 195) when it was omitted. From there it was copied into the compilation of 1917.

The question therefore arises, Why was the language retained through all of the several amendments of the law creating and governing county school districts of the first class if it was meaningless and was not to be given any force or effect? There is another phase of our school legislation which has some bearing at least on the question now before us. Before the county school districts of the first class were

created county superintendents were required to furnish to the county commissioners the estimates required by section 1891x27, supra. The county commissioners were then required to levy a tax not exceeding four mills on the dollar of all the taxable property in the county for school purposes. Comp Laws Utah 1907, sections 1864, 1865. In addition to the four mills aforesaid the school trustees were authorized to order an additional tax to be levied which was first limited to one-half of one per cent. R. S. Utah 1898, section 1815. That amount was subsequently increased to three-fourths of one per cent. Chapter 83, Laws Utah 1905. It was thereafter again increased in 1907 (chapter 102, Laws Utah 1907) to one per cent. That provision remained in force until 1915, when all the counties were made school districts of the first class, and at which time the arbitrary limitations were imposed which were held invalid in the cases to which we have referred. It will thus be seen that the right to order a levy of ten mills by the school trustees, plus four mills by the county commissioners, prevailed in all counties which were not created into county school districts of the first class. When in 1915 all counties were created into school districts of the first class, as a matter of law the arbitrary limitations found in the laws of Utah 1915, and which have been held invalid as before stated were imposed. It follows that under the law as it stood until 1915, in every county which lacked the requisite number of children of school age to constitute it a school district of the first class, a tax of at least fourteen mills for school purposes could be levied, while all counties which had the required number of children of school age, to wit, 2,500, (which under the law automatically constituted them county school districts of the first class) were, according to the contention of the defendants, limited to seven mills. Each county, therefore, with a school population of any number less than 2,500 could order a levy of fourteen mills for school purposes, while every county which had a population in excess of 2,500 was automatically limited to seven mills. Such an incongruity should

not be permitted to prevail unless the language requiring it is clear and explicit.

It is contended, however, on behalf of the defendants, that the incongruity is more apparent than real, because the Legislature in 1915 required all property to be assessed at a higher valuation than it had been assessed theretofore. There would be much force to that contention were it not for the incontrovertible fact that the limitation of seven mills is found many years prior to 1915. Indeed, defendants rely on chapter 135, Laws Utah 1911, where the limitation is found. The limitation, however, existed long before that date. In view of those facts is it not more reasonable to assume that the Legislature intended that the portion of section 1891x27, supra, which we have italicized, be given some force and effect, and that seven mills is not to be taken as an absolute and inflexible limitation?

There is still another cogent reason, however, why we are inclined to the view that the lawmaking power in creating county school districts of the first class did not intend to place so low a limitation upon the power of those districts to raise funds as to unduly limit the length of the school year. This is pointed out in the case of *Board of Education* v. *Hunter,* supra, and it is there shown that by chapter 29, Laws Utah 1911, a "high school fund" was created, which, according to the rules adopted by the state board of education, can be apportioned only among such school districts as shall maintain high schools for a period of nine months in each year according to the standard required by said board. It is also contended by plaintiff, and conceded by defendants, that the right to participate in that fund depends upon the condition that the high school of Carbon county be maintained for a period of nine months and according to the standard fixed by the state board of education. It is alleged under oath on behalf of plaintiff, and admitted by defendants, that plaintiff cannot maintain its high school for a period in excess of seven months if the limitation of seven mills is imposed. It is further conceded that such is the case with a considerable number of county school districts of the first

class in this state.  It is also conceded by the defendants that in several of the counties which constitute school districts under the law that portion of section 1891x27, supra, which we have italicized, has been construed as plaintiff seeks to construe it and that levies of more than seven mills have been made in such counties, and that such has been true, not only this year, but for past years.  Indeed the public records show that the levies in different counties composing school districts of the first class for the year 1920 vary all the way from three to fifteen mills.  All of the levies, therefore, in excess of seven mills must be held invalid if the contention of the defendants prevails.  Not only must that follow, but it must also follow as an inevitable consequence that all of those county school districts of the first class where property valuations do not amount to sufficient to provide the necessary revenues to conduct the schools for nine months with a seven mill levy must not only deprive the children of the opportunity of attending school for the full period, but in addition thereto every such county must forfeit its right to share in the high school fund before referred to.  Bearing in mind, therefore, that while it is our duty to declare the law as we find it, and neither to add anything thereto nor take anything therefrom, yet it is also our duty in case of ambiguity or doubt to construe and apply the law so as to make it fulfill its evident purpose and intent.

In view, therefore, of the matters herein referred to, and others to which we shall not pause to refer, we feel constrained to hold that the language of section 1891x27, supra, is not so clear and free from doubt as to authorize us to overturn all the levies that have been made pursuant to that section by the officers of the several counties, nor to declare the construction they have placed upon that section as clearly untenable.

In concluding this opinion we feel constrained to add that in arriving at the foregoing conclusion we have also kept in mind the fact that there is now pending before the people of this state a proposed amendment to the Constitution which, if adopted, will provide for reasonable and logical

limitations for taxes for all school purposes. Further, that, even though the amendment shall fail to carry, the Legislature which convenes next January must nevertheless correct the present unsatisfactory condition of our school revenue laws with the view of maintaining the high standard of our public schools and to make effective the fixed policy of the people of this state to afford all of our children the best public school education possible regardless of cost.

It follows from what has been said that a peremptory writ of mandate should issue, requiring the defendants to make a levy of eight and five-tenths mills on the dollar upon all of the property of Carbon county as shown by the assessment rolls for the year 1920 and in accordance with the estimate prepared by the plaintiff and filed with the defendants.

Such is the order.

CORFMAN, C. J., and WEBER, GIDEON, and THURMAN, JJ., concur.