## MAW v. LEE.

No. 6812.  Decided April 11, 1945.  (157 P. 2d 585.)

See 29 C. J. S. Elections, Sec. 182; 18 Am. Jur. 301.

*Shirley P. Jones* and *George M. Cannon,* both of Salt Lake City, for appellant.

*Rawlings, Wallace & Black* and *Walter M. Critchlow,* all of Salt Lake City, and *Clinton D. Vernon,* of Logan, for respondent.

McDONOUGH, Justice.

Plaintiff instituted this action under the declaratory judgment statute to have adjudicated the proper construction of certain sections of the election laws of this state to determine whether certain purported votes for governor cast at the last general election should be counted. The facts are not in dispute.

On many ballots a cross was placed in the circle underneath the Democratic emblem, and a cross was placed in the square after the name of J. Bracken Lee as candidate for governor on the Republican ticket, but no line was drawn through the name of Herbert B. Maw as the candidate for governor on the Democratic ticket. In some instances such ballots were counted for Herbert B. Maw, in other cases for J. Bracken Lee, and in still other cases for neither of them. The judgment of the court below declared that such votes should not be counted for either candidate.

By his assignments of error, appellant attacks the construction thus made of Section 25-6-21, U. C. A. 1943. The portions of the statutes (U. C. A. 1943) which relate to the manner of marking ballots and to the counting thereof are the following:

Section 25-6-20.

"Any voter desiring to vote for all the candidates upon any ticket

may mark in the circle above that ticket, or in the squares opposite the names of all candidates thereon, or may make both such markings. If the voter does not desire to vote for a candidate on a ticket under the circle in which he has marked, he may draw a line through the name of such candidate, and the cross in the circle shall count as a vote for all the other candidates on the ticket. To vote for candidates on two or more tickets he may mark in the squares opposite the names of such candidates without marking in any circle, or he may indicate his choice by marking in the circle above one ticket, drawing a line through the names of such candidates on that ticket for whom he does not desire to vote and marking in the squares opposite the names of the candidates of his choice upon other tickets. * * *"

## Section 25-6-21.

"Ballots thus marked shall be counted for the candidates designated by the marks in the squares, and for the candidates upon the ticket beneath a marked circle excluding the candidates through whose names the voter may have drawn a line. When a circle is marked and no lines are drawn through the name of any candidate thereunder, the ballot shall be counted for all the names upon the ticket beneath such circle. When more than one circle is marked, the ballot shall be rejected. When only one officer for any office is to be elected, if the voter marks in squares opposite the names of more than one candidate therefor, or *if having marked the circle on one ticket, he shall mark the name of a candidate on another ticket without drawing a line through the name of the corresponding candidate upon the ticket beneath the marked circle, such vote shall not be counted for such office.* When two or more officers are to be elected to the same office, if more squares opposite the names of candidates for such office are marked than there are officers to be elected to such office, or, if the aggregate number of unscratched names of such candidates on a ticket, the circle of which is marked, added to the number of such candidates on other tickets whose names are marked shall exceed the number of officers to be elected to such office, the ballot shall not be counted for any such candidates. No ballot marked by the voter shall be rejected because of marks on the ballot other than prescribed in this section, except when said marks on said ballot show an attempt on the part of one or more persons to so mark their ballots that it can be determined that the intent of said person or persons is to show concerted action on the part of a group in designating their ballots so that the action of said group or voter can be determined by any person. The intent of the voter should be given full consideration and mechanical and technical defects in voting

and failure on the part of the voter to follow strictly the rules for balloting as laid down in sections 25-6-19 and 25-6-20 of the Revised Statutes of Utah, 1933, shall not invalidate a ballot. * * *" (Italics added.)

The last two sentences quoted hereinabove from Section 25-6-21 were added to or inserted in the statute by the legislature in 1933. Laws of Utah, 1933, Chap. 21. They were inserted in lieu of the following sentence contained in the law prior to the amendment:

"Any ballot marked by the voter in any other manner than as authorized in this chapter shall be rejected."

The amendment was made by reenacting Section 25-6-21, R. S. U. 1933 with the foregoing sentence deleted and the two indicated sentences inserted.

The 1933 amendment was made at the next session of the legislature following the decision in this court of the case of *Evans* v. *Reiser,* 78 Utah 253, 2 P. 2d 615, 619. That case involved an election contest to determine which of two candidates for county recorder of Salt Lake County was legally elected. There were 571 ballots challenged. Of this number considerably more than half were rejected by this court as not being legal ballots because some mark was placed on the ballots other than those authorized by the statute. Some sixty odd ballots, it was held, could not be counted for either candidate because some mark other than a cross mark was placed in the appropriate square to indicate the choice of the voter. Votes were counted for one or the other of the candidates in cases where there was a reasonably effective attempt made by the voter to indicate his choice by the mark described by statute—the cross mark—in the space designated by the statute therefor. The opinion of the court emphasized the *mandatory* nature of the provision of the statute as it then read that "any ballot marked by the voter in any other manner than as authorized in this chapter shall be rejected."

Of 168 of the ballots involved a number were marked precisely as were the ballots here in controversy and de-

scribed at the outset of this opinion. Relative thereto, the court said:

"There are 168 ballots which show that the voter voted for two of the candidates for the office of county recorder. In each of these 168 ballots the voter either placed a cross in a circle under a party emblem and, without drawing a line through the name of the candidate for county recorder under the marked circle, marked a cross in the square opposite the name of one of the other candidates for county recorder, or marked crosses in the squares opposite the name of two of the candidates for county recorder."

The court quoted from Sec. 2217, C. L. Utah 1917 (now Sec. 25-6-21), the portion thereof which is italicized in the quotation thereof set out hereinabove, and then said:

"Under the plain mandatory language of the statute just quoted, the 168 ballots where two candidates have been voted for the office of county recorder may not be counted for that office. The trial court was right in refusing to count such ballots. The respective parties seem to concede that such ballots may not be counted because, while errors have been assigned by the party who deems herself adversely affected by the refusal of the court to count such ballots, the assignments in such respect have not been argued."

It was in the light of the decision in the Evans v. Reiser case, and no doubt in response thereto as appellant contends, that the amendment of 1933 was enacted.

Appellant's contentions may be thus summarized: By the 1933 amendment the legislature repudiated in toto the decision in Evans v. Reiser. That by providing that "the intent of the voter should be given full consideration," the legislature intended that the provisions of the law as to manner of voting are but directory whereas formerly they were, under that decision, held to be mandatory. That the intent of the voter is of controlling importance and that any language in the quoted statutes which is mandatory in form should not be held by us to be so in effect because the mandate given by the legislature in the amendment is that the intention of the voter controls. He further contends that where a voter has marked a cross in the circle

at the head of a party ticket, and he has also marked a cross in the square after the name of the candidate for governor on another ticket, the circle of whose ticket has not been marked, the voter thus has evidenced a choice of the latter for the office of governor.

In proceeding to examine his contentions we shall set out again for the convenience of the reader, the portion of Section 25-6-21 construed by the lower court:

"* * * if having marked the circle on one ticket, he [the voter] shall mark the name of a candidate on another ticket without drawing a line through the name of the corresponding candidate upon the ticket beneath the marked circle, such vote shall not be counted for such office."

Thus there is described by the legislature the very ballot here in controversy. We are concerned with no other.

The question is how should the judge of election have treated such ballots insofar as the office of governor is concerned. Read literally, the foregoing quotation readily answers the question. No shadow of ambiguity lurks in its carefully chosen words. Any literate person may glean their meaning without the aid of linguistic or legal technicians. They state simply and lucidly that the vote described should not be counted for the office in question.

But read in their context, do they mean something other than what they say? Disregarding for a moment the two sentences added by the amendment of 1933, it may be said categorically that, even disregarding the sentence stricken from the section at the time of amendment, there is found no contexual phraseology which tends to modify their plain import. Indeed, the other provisions of the section which were retained as part thereof at the date of amendment emphasize, if any emphasis could be added, the fact that the legislature meant by the simple mandate contained in the quoted provision precisely what it said. Thus, if a voter marks in more than one circle, the ballot is ordered rejected. If a voter marks in squares opposite the names

of more than one candidate for an office, where only one officer for such office is to be elected, the vote is not to be counted for such office. Where two or more officers are to be elected to the same office, if more squares opposite the names of candidates for such office are marked than there are officers to be elected, the ballot is directed not to be counted for any of such candidates. In such instances, as well as in the one here under consideration, the voter has not, in the opinion of the legislature, so indicated his choice as to permit the judges of election to record it.

We pass then to a consideration of the effect of the 1933 amendment upon the quoted provision. The two sentences added to the statute by the amendment are set out hereinabove. The first sentence deals with ballots ■ containing thereon marks in addition to the proper voting marks requisite under the unamended statute to evidence the choice of the voter. By such new sentence the legislature changed the law as construed in Evans v. Reiser to limit rejection of the entire ballot to such specific situation as is therein described. The second new sentence reads:

"The intent of the voter should be given full consideration and mechanical and technical defects in voting and failure on the part of the voter to follow strictly the rules for balloting as laid down in sections 25-6-19 and 25-6-20 of the Revised Statutes of Utah, 1933, shall not invalidate a ballot."

We assume that the clause, "shall not invalidate a ballot," has reference not merely to the entire instrument used by the voter to indicate his choice for all offices, but the vote evidenced thereon for a specific candidate. This was the construction evidently placed thereon by us in *Frantz* v. *Hansen,* 104 Utah 412, 140 P. 2d 631. This sentence, then, would have the effect of changing the rule announced in *Evans* v. *Reiser,* supra, under which some 60 votes for the office of County Recorder were rejected because the voting mark whereby the voter expressed his choice was

other than in strict accord with rules laid down by the statute, and would require a vote to be counted where the intent of the voter is clear, notwithstanding mechanical or technical defects in the vote or failure of the voter to comply strictly with the rules for voting as laid down in Sections 25-6-19 and 25-6-20.

But appellant insists that it means more than that. He first asserts the premise that the vote here under consideration unequivocally expresses the choice of the voter, a matter to be briefly adverted to hereinafter; and then he argues that the sentence must be construed as if it read:

"The intent of the voter shall be controlling notwithstanding anything to the contrary in this section or any other statute relating to the manner of voting or of counting of ballots."

True, at one place in his brief appellant asserts that after the 1933 amendment, "the old law became directory instead of mandatory," but the position taken in this contest obviously is more advanced than that. For if the provision dealing with disposition by election judges of the vote for governor in the described ballot be construed as directory subsequent to the date of the amendment, then as to the ballots rejected by judges of election, neither appellant nor respondent may make complaint. We assume, in so asserting, that by "directory" as contrasted with "mandatory," appellant means that those officials charged with the duty of counting votes may at their option not count such vote for either candidate, as the statute so construed would permit though not compel. Hence, their discretion may not be interfered with, for such discretion would clearly reside in such election judges under such an interpretation. However, to hold that the legislature meant to place such discretion in the election judges, is to ascribe to it an intention that a ballot *specifically described by it* might be counted for one or the other of the candidates in question in one election district and counted for neither in another. Patently, this is not the legislative will.

Appellant must take, and obviously he does take, a more specific stand. He says in effect that by the amendatory provisions of the statute the legislature either intended to make entirely nugatory the provision dealing specifically with the ballot herein under consideration; and, in such amended statute, described with the same particularity as in the statute as it existed prior to amendment; or, that it was so amended thereby as to give such provision a meaning directly contrary to that which the words used express.

The ballot described in the pleadings is identical with that which the statute says in so many words shall not be counted for the office of governor. Did the legislature in re-enacting, or continuing in force—it certainly makes no difference at this point which view is adopted—the provision of the statute which states that the described vote shall not be counted, intend that the amendment should be construed as though such provision had not been made a part of the re-enacted portions of the statute? We know of no rule of construction nor of reason which leads to the conclusion that the legislature did so intend. On the contrary, it is our duty to give effect, if such can be reasonably done, to every word, clause and sentence of a legislative enactment. *State ex rel. Morch* v. *White,* 41 Utah 480, 126 P. 330; *Board of Education* v. *Hunter,* 48 Utah 373, 159 P. 1019; *State Road Commission* v. *Industrial Commission,* 56 Utah 252, 190 P. 544; *Board of Education* v. *Bryner,* 57 Utah 78, 192 P. 627; *Forsyth* v. *Selma Mines Co.,* 58 Utah 142, 197 P. 586; *Buckle* v. *Ogden Furn. & Carpet Co.,* 61 Utah 559, 216 P. 684. We must conclude that the legislature did not unintentionally enact the provision of the statute in question, and likewise that it did not write something in the first part of the section of the statute in order to strike it down by implication in the latter part of the same section.

Nor did it amend such provision so as to cause it to mean what appellant in effect asserts it now says. To

reach by construction the result so contended for we must find from the language of the enactment that by inserting the second sentence of the amendment, the legislature intended its language in the questioned provision to read so as to have a meaning directly contrary to that which the words themselves express. We are asked to read the words "such votes shall not be counted for such office," as if the legislature had written, "such votes shall be counted for such office for the candidate after whose name a cross is placed in the square." Unless some other provision of the law were so repugnant to the statute as written as to compel such construction, this court would do violence to every primary rule of statutory construction, to so find. But as pointed out hereinabove the amendatory provisions can be given a reasonable construction while leaving the questioned provision unaltered in diction, sentence structure, and meaning.

In the foregoing discussion we have made no reference to the authority of the holding of this court in *Evans* v. *Reiser*, supra, and hereinabove quoted, which construes the provision under discussion. Respondent contends that the legislature adopted the amended statute with the meaning ascribed to the provision in such case. Appellant asserts that the rule that the legislature is presumed to have readopted the provision in the light of the construction placed thereon by the courts, has no application in this case, because what this court said relative to its meaning was but dicta concerning something not made an issue in the case. In this appellant is in error. The 168 ballots dealt with in such case were in issue. True, as pointed out in the opinion, the point was not argued by counsel. But for all that appears in the opinion, the determination of whether such votes should be counted was necessary to a determination of the ultimate issue. A contrary ruling might have changed the result of the election. The fact that the point was not argued might be cited as a basis for urging this court to re-examine the decision

on the point in question; but such fact would not obviate the controlling effect of such holding. The judicial mind adverted to and considered the precise question here involved and its pronouncement thereon was not dicta but authority. Hence, if resort must be had to presumption, respondent's contention relative thereto must be sustained.

But were there no such rule, we think the circumstances evidence a reenactment in the light of the holding of this court. Appellant's thesis is that the amendment was enacted to change the law announced in that particular case. It is unreasonable to assume that the legislative mind considered the decision as it dealt with the construction of one sentence in a section of the statute and re-enacted another sentence thereof entirely unaware of the fact that the same decision gave a construction of that sentence, which, according to appellant is out of harmony with the intent which the legislature was then voicing.

No contention is made that the legislature may not constitutionally prescribe reasonable rules for voting and for the counting of ballots. Appellant concedes that it may. Providing that a ballot marked like the one under consideration may not be counted, is not unreasonable. It is but an expression of legislative judgment that in the light of the effect given the two markings by the voting statutes, the ballot fails to sufficiently indicate the voter's choice. If support for such judgment need be found it is revealed in the varying conclusion concerning the voter's intent which courts of last resort have reached under voting statutes similar to ours where no specific direction has been given by the legislature as to whether or not such vote should be counted. See *Vallier* v. *Brakke,* 7 S. D. 343, 64 N. W. 180; *Gainer* v. *Dunn,* 29 R. I. 239, 69 A. 851; *Hunt* v. *Campbell,* 19 Ariz. 254, 169 P. 596; *State ex rel. Lambert* v. *Smith,* 106 W. Va. 544, 146 S. E. 378.

The ruling of the court below was correct. Its judgment is affirmed. Costs to respondent.

TURNER, WADE, and WOLFE, JJ., concur.

LARSON, Chief Justice (concurring).

I concur in all that is said in the opinion of Mr. Justice McDONOUGH. But I have grave doubts as to whether an action such as this properly lies under the Declaratory Judgments Act. The question is not raised so we do not enter into any discussion thereof. The opinion is not to be taken as lending color to the propriety of such proceeding were the question raised.