FOWERS v. LAWSON et al.

No. 3466.   Decided July 1, 1920.   (191 Pac. 227.)

1.  VENDOR AND PURCHASER—INSTALLMENT CONTRACT OBLIGATED BUYERS TO PAY ONLY FIFTEEN DOLLARS A MONTH. A contract by buyers of realty to pay $200 cash and fifteen dollars a month thereafter until whole of price had been paid, with interest on deferred payments at eight per cent. per annum, obligated buyers to pay fifteen dollars each month in extinguishment of the interest for that month, balance of payment to be applied on principal.

2.  VENDOR AND PURCHASER—CONSTRUCTION OF CONTRACT BY PARTIES BINDING. Where the buyers of land agreed to pay $200 in cash and fifteen dollars a month thereafter until the whole price was paid, with interest on deferred payments at eight per cent. per annum, an engagement possibly ambiguous, construction of parties for nine years, effected by buyers making, and the sellers accepting a, payment of fifteen dollars each month in extinguishment of the interest due, balance for application on the principal, was binding on the parties.

3.   MORTGAGES—TRANSFEREE CHARGED WITH NOTICE OF RIGHTS OF
     PERSONS IN POSSESSION.   The transferee of a note and the
     mortgage securing it was charged with notice of all the rights
     of prior purchasers from the mortgagor, in possession.[1]

4.   APPEAL AND ERROR—CROSS-APPEAL MUST BE TAKEN TO REVERSE
     OR MODIFY JUDGMENT IN FAVOR OF PARTY ASSIGNING CROSS-ERROR.
     Where the purpose of a cross-assignment is to reverse or modify
     judgment in favor of the person assigning cross-errors, it is
     necessary to take cross-appeals.[2]

Appeal from District Court, Second District, Weber Coun-
ty; *A. N. Agee*, Judge.

Action by Elizabeth Fowers against David C. Lawson and
others. From judgment for plaintiff, Andrew C. and Emily
Rasmussen, two defendants, appeal.

REVERSED, and cause remanded, with directions.

*Geo. Halverson*, of Ogden, for appellants.

*John A. Sneddon*, of Ogden, for respondent.

FRICK, J.

The plaintiff, as indorsee of a promissory note in favor of
one Ralph E. Hoag and the assignee of the mortgage given
to secure said note, brought this action to foreclose said mort-
gage. The complaint is in the ordinary form of such actions.
It is therein alleged that the defendants claim some "interest
in or lien upon" the mortgaged premises, but the plaintiff
avers that such interest or claim is subject to the mortgage.
The defendants Andrew C. and Emily Rasmussen answered
the complaint, and admitted that they claimed some interest
in the premises, setting forth the same and to which we shall
refer later, and averred that their interest is superior to said

---

[1] *Shafer* v. *Killpack*, 53 Utah 468, 173 Pac. 948.

[2] Distinguishing *Railroad* v. *Board of Education*, 35 Utah 13,
99 Pac. 263.

mortgage. The defendant Evona Investment Company also answered the complaint, and set forth its claim, to which it is not necessary to refer, however. Upon a hearing the court entered judgment in favor of the plaintiff, in which certain conditions were imposed, from which judgment Andrew C. and Emily Rasmussen appeal.

In order to fully understand the real questions presented for determination, it will be necessary to refer to the court's findings of fact and conclusion of law somewhat in detail.

The court in substance found the following facts:

That on the 24th day of March, 1911, the defendant David C. Lawson was the owner of the real estate described in the mortgage, and that on that date he entered into a contract with Andrew C. and Emily Rasmussen, hereinafter, for convenience, styled appellants, whereby said Lawson agreed to erect a certain dwelling house on the real estate described in said contract and in the mortgage aforesaid, and the appellants agreed to purchase said dwelling house and said parcel of ground for the agreed price of $2,150, to be paid as follows:

"$200 in cash, the receipt of which is hereby acknowledged, and fifteen dollars per month thereafter until the whole of said purchase price has been paid, with interest on all deferred payments at the rate of eight per cent. per annum."

That thereafter said Lawson completed said dwelling house, and the appellants, on the 20th day of June, 1911, went into possession of said dwelling and said parcel of ground and paid said sum of two hundred dollars and the sum of fifteen dollars "each and every month thereafter" as specified in said contract.

That on the 23d day of June, 1911, the defendants David C. and Orrilla Ann Lawson duly executed and acknowledged a deed whereby they conveyed said parcel of ground to the appellants, and thereafter, on the 6th day of July, 1911, said deed, together with the contract of purchase entered into between said Lawson and appellants, was placed in escrow with the Utah National Bank of Ogden. After referring to the papers left in escrow, the material portions of the agreement read as follows:

"The said Utah National Bank is hereby empowered and directed to deliver the above-described papers to Andrew C. Rasmussen, party of the second part, or order, only upon payment to them of the sum of $2,150 and interest as specified below, for account of said D. C. Lawson, payable as follows: As per contract herewith, payments to date from June 20, 1911. In case the terms of this escrow shall be fulfilled, then this agreement shall terminate and be null and void, but, however, in case the party of the second part shall fail to make the payments at maturity, as aforesaid and for a period of —— days thereafter, then and in that case the said party of the first part shall have the option, if he so desires, to withdraw the above-described papers, and shall retain any and all sums of money which may have been paid thereon by the said party of the second part as liquidated damages, and the Utah National Bank shall be released from the trust herein created, and from any further responsibility in this matter."

That on the 23d day of June, 1911, after the appellants had entered into and were in possession of the premises aforesaid, and without their knowledge or consent, the Lawsons executed and delivered to Ralph E. Hoag their certain promissory note for the sum of $1,000, the payment of which they secured by executing and delivering to him a mortgage upon said parcel of ground with the dwelling thereon, which note was payable in three years from date with eight per cent. interest.

That when said note became due said Lawsons executed and delivered to said Hoag a renewal note for said sum of $1,000, payable August 24, 1917, with eight per cent. interest, and secured the payment thereof by executing and delivering to said Hoag a mortgage on the premises aforesaid, which mortgage was duly recorded, and which note and mortgage were executed and delivered without the knowledge or consent of the appellants.

That on the 26th day of August, 1914, said Hoag duly indorsed and delivered said note and assigned said mortgage to the plaintiff herein.

That said Lawsons did not pay said note or any part thereof except the accrued interest up to the 3d day of April, 1917, which interest was paid out of the fifteen dollars monthly payments made by the appellants on said contract, and which payments were made to the bank aforesaid.

That there is due on said note and mortgage the sum ·of $1,177.75.

That appellants "have made default in the payment of the installments to be paid by them upon the contracts hereinbefore set out, and that there is now owing and unpaid on said contract the sum of $1,694.33, of which sum $1,229,13 is past due."

We have omitted all the findings and conclusions of law we do not deem pertinent to the question to be decided.

The court also found as conclusions of law that the appellants "were required to pay on said contract the sum of fifteen dollars principal and interets at eight per cent. on the unpaid portion of the purchase price each month." The court therefore found that they were in default as before stated, and found that they should pay said $1,229.13 within sixty days, and in case they failed to do so that said premises be sold and the proceeds of sale applied first to the payment of costs and second to the payment of the amount found due on plaintiff's mortgage. The court also found that the Lawsons were personally liable for the debt secured by said mortgage. The court also adjudged the mortgage to be inferior to the rights of appellants, but, as before stated, held that, in view that they were in arrears in the payments on their contract of purchase, plaintiff was entitled to the money which is due and unpaid thereon as before stated.

A decree was entered in accordance with the findings of fact and conclusions of law, from which this appeal is prosecuted.

The appellants contend that the court erred in finding that they are in arrears or "in default" in making the payments on the contract of purchase. The objections made by them, however, really relate to the court's conclusion of law in construing the contract of purchase entered into between Lawson and the appellants and under which they are in possession of the premises. The so-called finding of fact is entirely based upon the construction the court placed on said contract. The portion of the contract construed by the court relates to the payment of the purchase price stipulated in the

contract of purchase. The terms with regard to the payments are:

"Two hundred dollars in cash, the receipt of which is hereby acknowledged, and fifteen dollars per month thereafter until the whole of said purchase price has been paid, with interest on all deferred payments at the rate of eight per cent. per annum."

While to the writer the foregoing language seems reasonably clear and free from doubt, yet such may not be true as to all minds. The language is that fifteen dollars shall be paid each month until the principal and interest are paid. To my mind this language means that both principal and interest shall be paid at the rate of fifteen dollars per month. The principal and interest, so far as the payment thereof is concerned, are treated as though the interest were a part of the purchase price; that is, in making the payments the fifteen dollars monthly payments include both the principal and the interest the same as though both were expressed as part of the purchase price. The court, however, held that the contract means that fifteen dollars was to be paid upon the principal, and in addition thereto the appellants were required to pay eight per cent. interest upon the entire principal each month. The contract does not so specify. Neither does the contract mean that the appellants should pay the fifteen dollars and in addition thereto eight per cent. interest on the fifteen dollars for the past month. Nor did the court so construe it, and yet the language is more susceptible of that meaning than it is of the meaning the court placed upon it, namely, that it means that the appellants were required to pay fifteen dollars each month, and in addition thereto a sum equal to eight per cent. interest on the whole of the unpaid purchase price. If that were the intention of the parties, the language used does not clearly express such intention.

Let it be conceded, however, that the language respecting payments is not free from ambiguity or doubt. The parties to the contract, from the very beginning, commencing in 1911, until the bringing of this action, and for a period of practically nine years, always construed the contract to mean

that fifteen dollars was the maximum monthly payment that could be required thereunder, and payments in that amount have always been made by the appellants and accepted by Lawson and the bank to which the payments were made. So much of the fifteen dollars as was necessary was each month applied to the payment of the accrued interest, and the remainder was applied on the principal. We thus have a contemporanenous, a continued, and a prac- **2** tical construction of the contract by the parties thereto. Let it also be remembered that the construction was not a hasty, or, perhaps, an illy considered construction. Upon the contrary, it was one which had been continued for years and was applied very many times in making payments. The law is well settled that, where the language used in a contract is ambigous, and where the parties have construed it, and such construction is not clearly contrary to the ordinary and usual meaning of the language, the courts will follow and enforce the construction the parties have given the contract. The rule is well and clearly stated in 2 Elliott, Contracts, section 1537, under the heading "Practical Construction," in the following words:

"It is a familiar law that, where a contract is ambiguous in its terms, a construction given to it by the parties thereto and by their actions thereunder, before any controversy has arisen as to its meaning, with knowledge of its terms, is entitled to great weight, and will, when reasonable, be adopted and enforced by the courts. The construction placed on the contract by parties thereto prevails when the language used will reasonably allow such construction, even though the court would probably adopt a different construction were it not for the practical construction already placed by the parties on their agreement. The construction placed upon the contract by the parties themselves is of great value in determining its correct interpretation. The reason underlying this rule is that it is the duty of the court to give effect to the intention of the parties where it is not wholly at variance with the correct legal interpretation of the terms of the contract, and a practical construction placed by the parties upon the instrument is the best evidence of their intention."

To the same effect are *North Boulder, etc., Co.* v. *Leggett D. & R. Co.*, 63 Colo. 522, 168 Pac. 742, and *Board of Com'rs* v. *Henderson* (Okl.) 168 Pac. 1007.

Lawson would thus be bound by the construction he himself had placed upon the contract. Plaintiff is in no better plight. The note and mortgage in question were executed and delivered by Lawson to Hoag long after appellants went into possession of the mortgaged premises, and, as the court found, they were so executed and delivered without their knowledge or consent. Plaintiff, by reason of their possession, was charged with notice of all of their rights. The law is well and tersely stated in 2 Ballard, Law of Real Property, section 44, as follows:

"Where the holder of the legal title is out of possession, those who deal with him as to the title, without making inquiry of the one in possession, do so at their peril."

In 4 Ballard, Law of Real Property, section 588, is is said:

"Possession of land by a contract purchaser is constructive notice of his rights."

In 7 Ballard, Law of Real Property, section 619, it is said:

"Actual possession of land is notice to the world of the ownership or interest therein. * * * Such possession is constructive notice of everything which a party interested in the premises would get by inquiring of the party in possession."

While there are exceptions to the rule just stated, which are referred to by this court in the case of *Shafer* v. *Killpack*, 53 Utah 468, 173 Pac. 948, the case at bar does not come within any of the exceptions, but falls within the general rule. Moreover, the plaintiff has sacrificed nothing, since her security is ample, and if she needs the money she no doubt may obtain it by selling the security, precisely as did Hoag. Upon the other hand, the court's construction may seriously affect appellants. They may lose their home by being compelled to make the payments in a much shorter period of time than they had agreed to make them in case they are financially unable to do so. Had the payments been required to be made by Lawson on entering into the contract as they are now required to be made by the court, it is quite probable that appellants would not have entered into the contract, but would have purchased a home from some other person.

While the court was clearly right in ruling that the rights

of the plaintiff as mortgagee are subsequent and inferior to the rights of the appellants under their contract, yet, in our judgment, the court erred in holding that the appellants had breached the terms of their contract and are in arrears in making the payments on the purchase price.

The plaintiff has, however, assigned cross-errors, and contends that the court erred in holding that the rights of appellants under the contract of purchase are superior to her rights as mortgagee, and she assails the judgment and asks that it be reversed and modified in that particular. In view of the conclusion we have reached respecting the terms of the contract of purchase entered into between Lawson and appellants, plaintiff's contentions are untenable. We desire to add here, however, that in view that plaintiff seeks to reverse or modify the judgment the cross-assignment of errors is of no avail. Where, as here, the purpose of the cross-assignment is to reverse or modify a judgment in favor of the party assigning cross-errors, it is neces-          4 sary to take a cross-appeal. It is true that in the case of *Railroad* v. *Board of Education,* 35 Utah, 13, 99 Pac. 263, and on which case plaintiff's counsel relies the writer of this opinion used language which would justify counsel in making the foregoing contentions. The judgment in that case, however, was not reversed or modified upon the cross-assignment of error, and this court, since that case was decided, has in no case reversed or modified a judgment in favor of the party assigning cross-errors upon such cross-assignment of errors. Appeals in this jurisdiction are permitted only from final judgments, and in case it is intended to reverse or modify a judgment a cross-appeal is as necessary by the party seeking the reversal or modification of a judgment in his favor as is the principal appeal. True, as pointed out in the case referred to, the cross-appellant may avail himself of the bill of exceptions and of the whole record, if the same is brought to this court, which is prepared and filed by the principal appellant. It, however, is not true, as there intimated, that he may also reverse or modify the judgment in his favor upon his cross-assignment of errors without a

cross-appeal. If he desires to reverse or modify the judgment in his favor, he must serve notice of his cross-appeal and assign his errors in support thereof. As a matter of course, if he does not desire to reverse or modify the judgment, but merely intends to point out errors which neutralize, modify, or meet the assignment of errors of the principal appellant, he may assign such cross-errors for that purpose without serving a notice of cross-appeal. The taking of a cross-appeal in this jurisdiction is so simple, and, withal so free from labor, trouble, or expense that it is always safer and more prudent to serve notice of a cross-appeal than merely to rely on cross-assignments of error. We have made the foregoing observations and do so unhesitatingly, so as not to mislead the profession by relying on what is said in the case of *Railroad* v. *Board of Education*, supra.

For the reasons stated, the judgment is reversed, and the cause is remanded to the district court of Weber county, with directions to set aside its findings of fact and conclusions of law in which it found that the appellants are in default in the payments on the purchase price under their contract and to substitute findings and conclusions in harmony with this opinion, and, further, to modify the findings, conclusions of law and judgment of foreclosure so as to make plaintiff's rights subject to the rights of appellants in the mortgaged premises; appellants to recover their costs on this appeal.

CORFMAN, C. J., and WEBER, GIDEON, and THURMAN, JJ., concur.