# FRANTZ v. HANSEN

No. 6500.  Decided August 9, 1943.  (140 P. 2d 631.)

See 29 C. J. S., Elections, sec. 187; 18 Am. Jur., 301.

*Elias Hansen, L. Delos Daines, Fred L. Finlinson,* and *F. Henri Henriod,* all of Salt Lake City, for appellant.

*Walter M. Critchlow* and *Leonard W. Elton,* both of Salt Lake City, for respondent.

MOFFAT, Justice.

Appeal from a decree of the District Court for Summit County adjudging the parties herein named to have received a tie vote at the Park City election, November 4, 1941, and holding as void and of no effect the certificate of election under which appellant Hansen had assumed the duties of the office of four-year councilman of Park City, Utah, and ordering the parties to appear before the Mayor and City Recorder on a date to be fixed, "then and there to decide by lot which of the parties hereto shall be elected to the office of four year councilman of Park City."

Appellant Hansen was the Republican candidate and respondent Frantz the Democratic candidate named on the official ballot for the office of four-year councilman of Park City, Utah. There were no other names on the ballot for this office. It is alleged by respondent contestant that after the regular city election in Park City on November 4, 1941, the Board of Canvassers "erroneously, illegally and exceeding its jurisdiction, certified that said Clements P. Hansen had a plurality of one (1) vote over said Albert Frantz," that the City Recorder thereupon issued to Hansen a certificate of election to said office, and Hansen took oath and assumed the duties thereof. Frantz then alleged errors by the Board of Canvassers and judges of election in tallying the ballots cast, and prayed for a hearing to determine the contest. Issue was joined and a hearing had. The following stipulation was entered into:

"That there are six (6) election districts within Park City, Summit County, Utah, and that an inspection and recount of all the ballots cast and used in all of the said districts in said city is necessary and desirable for the proper determination of the election herein contested, and that the court may order all of the ballots cast and used in the

city election held at Park City, Summit County, Utah, on the 4th day of November, 1941, inspected and recounted by the court and upon such inspection and recount the court to determine which of the parties is the duly elected Four-year Councilman of Park City."

Upon the hearing, the court found that 579 unquestioned votes were cast for appellant Hansen and 575 unquestioned ballots cast for respondent Frantz, with fourteen ballots questioned by either candidate. These questioned ballots were marked and received in evidence as Exhibits A to N, inclusive. The trial court found that four of these ballots had been so marked as to render them invalid as votes for either candidate (Exs. A, C, J, and K), counted seven of them as valid votes cast for Frantz (Exs. B, D, E, F, G, M and N), and three as valid votes cast for Hansen (Exs. H, I and L), resulting in a final count and finding of 582 votes cast for each candidate and the judgment cancelling the certificate of election theretofore issued to Hansen and ordering the candidates to appear before the Mayor and City Recorder to draw lots, pursuant to the provisions of Sec. 25-11-4, U. C. A. 1943, to determine which of the two should be certified as elected to the office in question. Hansen appeals from this judgment.

The question submitted must be determined by our examination of and judgment on the fourteen questioned ballots. After the decision by this court in *Evans* v. *Reiser*, 78 Utah 253, 2 P. 2d 615, handed down in August, 1931, the following language was stricken from what is now Sec. 25-6-21, U. C. A. 1943,

"any ballot marked by the voter in any other manner than as authorized in this chapter shall be rejected,"

and the law was amended so that more liberal interpretation may be given a ballot in order to preserve the full intent of the voter as evidenced thereon. The pertinent provisions of the law governing the question in hand are here quoted:

## Sec. 25-6-19, U. C. A. 1943. Manner of Marking Ballot.

"* * * The voting mark shall be a cross in the circle or square and the cross required to be used in this chapter shall consist of two straight lines as nearly equal in length, and crossing each other as near the center of each line as practicable."

### Sec. 25-6-20.

"Any voter desiring to vote for all the candidates upon any ticket may mark in the circle above that ticket, or in the squares opposite the names of all candidates thereon, or may make both such markings. If the voter does not desire to vote for a candidate on a ticket under the circle in which he has marked, he may draw a line through the name of such candidate, and the cross in the circle shall count as a vote for all the other candidates on the ticket. To vote for candidates on two or more tickets he may mark in the squares opposite the names of such candidates without marking in any circle, or he may indicate his choice by marking in the circle above one ticket, drawing a line through the names of such candidates on that ticket for whom he does not desire to vote and marking in the squares opposite the names of the candidates of his choice upon other tickets. * * * The unnecessary marking of a cross in a square on the ticket below the marked circle shall not affect the validity of the vote. * * *"

### Sec. 26-6-21.

"Ballots, How Counted—Defects Disregarded. Ballots thus marked shall be counted for the candidates designated by the marks in the squares, and for the candidates upon the ticket beneath a marked circle excluding the candidates through whose names the voter may have drawn a line. When a circle is marked and no lines are drawn through the name of any candidate thereunder the ballot shall be counted for all the names upon the ticket beneath such circle. When more than one circle is marked, the ballot shall be rejected. When only one officer for any office is to be elected, if the voter marks in squares opposite the names of more than one candidate therefor, or if having marked the circle on one ticket, he shall mark the name of a candidate on another ticket without drawing a line through the name of the corresponding candidate upon the ticket beneath the marked circle, such vote shall not be counted for such office. * * * *No ballot marked by the voter shall be rejected because of marks on the ballot other than prescribed in this section,* except when said marks on said ballot show an attempt on the part of one or more persons to so mark their ballots that it can be determined that the intent of said person

or persons is to show concerted action on the part of a group in designating their ballots so that the action of said group or voter can be determined by any person. *The intent of the voter should be given full consideration and mechanical and technical defects in voting and failure on the part of the voter to follow strictly the rules for balloting as laid down in sections 25-6-19 and 25-6-20 of the Revised Statutes of Utah, 1933, shall not invalidate a ballot. * * * "* (Italics added.)

Examining the questioned ballots in the light of the amended statutes, we conclude that Exs. A, B, C, D, E, F, G, K, M and N must be counted as valid votes for contestant Frantz; Exs. H, I and L must be counted for contestee Hansen; and Ex. J must be rejected as being neither a vote for Frantz nor for Hansen. This results in a final recount of 585 votes for Frantz and 582 votes for Hansen.

The questioned votes which we conclude must be counted for Frantz are here described: Ex. A is marked with crosses in the squares following the names of all candidates on the Democratic ticket. The circle is unmarked. After the name of Wm. Addy, candidate for two-year councilman, the voter wrote in the words, "this one." This ballot was rejected by the lower court. The statute provides,

"No ballot marked by the voter shall be rejected because of marks on the ballot other than prescribed in this section, except when said marks on said ballot show an attempt on the part of one or more persons to so mark their ballots that it can be determined that the intent of said person or persons is to show concerted action on the part of a group in designating their ballots so that the action of said group or voter can be determined by any person."

We cannot say that the words, "this one," are any more than an expression of emphasis by the voter as to Wm. Addy. The ballot clearly shows a definite vote for Frantz.

Ex. B bears a cross in the circle under the Democratic party emblem. The bottom of the ballot was mutilated at the time it was removed by the judges from an absentee voter's envelope. A strip across the bottom containing the name of the last candidate on each ticket is missing. This ballot, however, was mutilated at

the time of its removal from the envelope and observed first-hand by the judges, so that there is no question or room for speculation as to how or why it became mutilated. The ballot shows a clear intention to vote for Frantz.

Ex. C was rejected by the trial court. It bears a cross in the circle under the Democratic emblem, and no other crosses. However, it shows a faint straight line drawn through the names of the three last candidates on the Republican ticket, with half an arrow head at the bottom name. It may be an inverted, long check mark. At least, we fail to see any significance in the mark and do not regard it as fatal to the ballot. This exhibit also shows clearly a vote for Frantz.

Exs. D, E and F bear a cross in the circle on the Democratic ticket and each bears a perpendicular pen line drawn through the names of the Republican candidates. We view these lines as negative in character and conveying no other significance, which is also the view taken by the trial court.

Ex. G bears check marks in five of the seven squares following the names of the Democratic candidates. A check mark was placed in the square after the name of Vern L. Peterson, candidate for two-year councilman, but obliterated. The square after the name of the candidate for treasurer is left blank. There is no mark in the circle at the top of the ticket. While the voter did not use the cross mark described in the statute, the check marks are a common method of checking off or indicating the intention of a person using them, and cannot be said to be distinctive. The check marks are consistent and to make more clear his intention, the voter repeated the marks in the blank third column of the ballot opposite the names of the candidates on the Democratic ticket for whom he cast his vote. This must clearly be counted as a vote for Frantz.

Ex. K was rejected by the trial court. It bears a cross in pen and ink in the upper right hand corner of the enclosed

space allotted to the Democratic ticket and just to the right of the head of the party emblem. The ballot bears no other markings. While the cross is some two inches from the circle, we view it as a well intended vote for the candidates named under the party emblem near to which the cross was placed. This is clearly a straight vote for the Democratic ticket, and must be so counted as a vote for Frantz.

Ex. M is marked with a cross in the circle under the Democratic emblem. Crosses are also placed after the names of three Democratic candidates, not including Frantz, and the other squares left blank. On the Republican ticket, a cross was placed in the square after the name of the candidate for Mayor, and then obliterated, and a cross placed in the square after the name of the candidate for two-year councilman but no line drawn through the name of the opposing candidate on the Democratic ticket. Under the law as it stands, this ballot must be counted as a vote for Frantz, the unnecessary crosses in the squares having no significance.

There has been some difficulty in the discussion and consideration of Ex. N. The ballot bears a cross in the Democratic circle and no other mark thereunder. However, on the Republican side, a cross was placed in the square after the name of appellant Hansen, but a pen line drawn through his name. A faint line is drawn through the name of the candidate for two-year councilman, and a cross after the name of the candidate for recorder but no line drawn through the name of the opposing Democratic candidate. By the same reasoning applying to Ex. M, this ballot must also be counted as a vote for Frantz.

Exs. H, I and L must be counted as votes for appellant Hansen, and were so found by the trial court. Ex. H bears no cross in either circle, but the vote for Hansen is plainly indicated by a cross in the square following his name. On Ex. I, a cross was placed in the square

after Frantz's name, but obliterated, and a line drawn through his name, with a cross in the square after Hansen's name. No cross appears in either circle on this ballot. Ex. L bears a cross in the Democratic circle. Frantz's name is stricken out by perpendicular pen marks and a cross placed in the square opposite Hansen's name.

Ex. J must be rejected as being neither a vote for Hansen nor for Frantz, as so found by the trial court. A cross was placed in the Democratic circle, a definite line stricken through the name of Frantz and the square following but no mark made in the square following Hansen's name; thus, the ballot cannot be counted as a vote for either candidate.

That part of the decree of the lower court ordering the cancellation of the election certificate issued to Hansen referred to is affirmed; and the cause is otherwise reversed and remanded with instructions to recast the findings and decree in the particulars indicated by our views expressed herein; each party to bear his own costs.

WADE, J., concurs.

WOLFE, Chief Justice (concurring in part, dissenting in part).

I concur as to the holdings except as to  ballots designated as exhibits K and N.

Sec. 25-6-20 prescribes how a voter shall mark his ballot if he desires to vote for all the candidates upon the ticket. The cross (defined by Sec. 25-6-19) shall be placed

"In the circle above that ticket * * *."

I do not think the provision that the

"intent of the voter should be given full consideration and mechanical and technical defects in voting and failure * * * of the voter to follow strictly the rules for balloting as laid down in Sections 25-6-19 and 25-6-20 of the Revised Statutes of Utah, 1933, shall not invalidate a ballot"

permits the judges of the elections or the courts to venture a guess as to the intent. There must be sufficient indication from the ballot as to what the voter really intended. The indications must be such as lead the mind naturally and without guess to infer the voter's intent. If the markings are in such position or of such nature that from the whole ballot one intent may be equally as inferable as another the result of trying to fathom what was really in the voter's mind would be a guess. In ballot represented by exhibit "K" the cross is not in the circle. It does not touch the circle above the list of Democratic candidates. It is about as far away from the circle as it can be and not be outside of the parallel double lines bounding the list of Democratic candidates. All that can be said for it is that it is inside the column formed by the extension of those double lines. I do not think this shows a substantial attempt to comply with Sec. 25-6-20. It seems to me that the indications must be that the voter was attempting to follow the instructions of the law.

In ballot marked Exhibit "N" there is a cross right in the Democratic circle thereby indicating a vote for that full ticket. There is a plain indication that the voter's mind considered the names of Hansen and Thompson. A distinct cross is placed in the square after their names. Had no faint lines been drawn through the name of Hansen I would say that even though no lines had been drawn through the name of Frantz on the Democratic side, it would suggest that the voter desired to vote for Hansen and Thompson on the Republican ticket. But that would not be certain. He may have put the cross before their names first and then decided to vote straight Democratic. This is somewhat borne out by the fact that very faint lines—much fainter than his crosses —are drawn through the name of Hansen, although no such line is drawn through the name of Thompson, but through the name of Peterson on the Republican ticket, although no cross appears in the square opposite Peterson's name as it does in the square opposite Hansen's name. But the ballot leaves us in a state of doubt as to what the real intentions

of the voter were. Did he first vote straight Democratic then want to exclude from that vote the names of Frantz and Wallace and vote respectively for Hansen and Thompson and then again change his mind as to Hansen and try by the faint line to indicate that he wished that choice erased? But if so, why did he draw a faint line also through the name of Peterson whose name he had not signified with a cross? Was he just making strokes with his pen instead of stroking his chin while meditating? Or did he start to vote for certain individuals in the Republican column and then decide to vote straight Democratic and try to obliterate Hansen but by a feeble line only and fail to do the same with Thompson? One guess is as good as another. There are no indications which point preponderately to one intent and to the exclusion of all others. I think this ballot cannot be counted.

I have considerable doubt whether the judgment pronounced in the opinion is correct in view of our previous holdings. There were in this case cross-assignments of error but no cross-appeal. We have more than once held that cross-assignments can only have the effect of saving to the respondent the judgment of the lower court, even granted the appellant may prevail in his assignments of error. If the respondent desires a judgment reversed which he thinks also erroneous as to him, he must cross-appeal. After all a cross-appeal is another name for an appeal by the respondent and it would seem he would have equally to follow the methods laid down by statute. In this case the judgment was that the candidates should appear before the Mayor and City Recorder to draw lots pursuant to the provisions of Sec. 25-11-4, U. C. A. 1943, to determine which of them should be certified as elected to the office in question. Hansen alone appealed from this judgment. We find that the court was correct in setting aside Hansen's certificate of election, but we go further and say this decision results

"* * * in the assumption of the office of the four year councilman by Respondent Frantz,"

and our order reads as follows:

"That part of the decree of the lower court ordering the cancellation of the election certificate referred to is affirmed, and the cause is otherwise reversed and remanded with instructions to recast the findings and decree in particulars incidated by our views expressed herein; each party to bear his own costs."

If Hansen fails to prevail on appeal and the cross-assignments of error go no further than to preserve the judgment of the lower court as it is, the result would seem to be that Hansen having lost the appeal and the respondent not having himself appealed from the judgment, the judgment should be fully affirmed and the drawing proceed as ordered by that judgment. I do not think the stipulation reading, as far as this point is concerned

"* * * and upon such inspection and account the court to determine which of the parties is the duly elected Four-year Councilman of Park City,"

can effect the result. The lower court did inspect and recount the ballots and concluded that there was a tie and thereupon ordered the procedure prescribed by Sec. 25-11-4, U. C. A. 1943, to resolve this tie. We find that Frantz was really the one elected but in absence of a cross-appeal our judgment can go only so far as to hold that Hansen cannot prevail on his appeal which leaves the judgment as the lower court made it, to wit: the necessity of deciding by lot. The lower court has obeyed the stipulation. If the respondent desired to go further than merely preserving the lower court's judgment claiming the court erred not only in its holding in rejecting certain ballots as to him but in not giving judgment that he was elected, he should have cross-appealed on the theory that the court erred in the law and therefore found wrongly on the powers given it by the stipulation.

I can well see the awkwardness of the situation. If in drawing lots Hansen should win it would be a victory for him even in the face of our having found that Frantz was in

fact the real winner in the election. Perhaps under our new rule-making power we should liberalize the procedure on appeal and treat cross-assignments as if they were cross-appeals but if so it should be done as part of a comprehensive body of rules and not by piecemeal and indirectly through decisions. While I think the order contained in the decision reaches a just result, I have some misgivings as to the uncertainty which may be created. In the above matter all I care to do is call attention to the situation in the hope that it may lead to a serious reconsideration of our rules relating to cross-assignments and cross-appeals. I do not care to register a dissent from the judgment pronounced by the main opinion in this regard.

However, in this case I see no reason why the prevailing party should not have his costs.

LARSON, Justice.

I concur in the opinion of Mr. Justice MOFFAT. In view of what is said by the CHIEF JUSTICE, I wish to add, that I consider the rule that cross-assignments should be considered as something different from a cross-appeal, as an archaism which long since outlived its usefulness. When a case is appealed to this court it should be here for examination upon any and all assignments of error attacking the judgment, made by either party. The requirement of the routine and ritual of a "cross-appeal" is more suggestive of ancient religion than modern jurisprudence.

However, the rule as to cross-assignments merely upholding the judgment does not apply to election contests. An election contest such as here involved is an action to determine the right to a public office. U. C. A. Par. 25-141. Such contests are purely statutory. *Payne* v. *Hodgson,* 34 Utah 269, 97 P. 132. All lawful ballots actually cast at the election should be counted in determining the right to the office. *Young* v. *Deming,* 9 Utah 204, 33 P. 818. And judgment

rendered must conform to issues raised in the pleadings. *Hamer* v. *Howell*, 31 Utah 144, 86 P. 1073. The statute, Sec. 25-14-10, U. C. A. 1943, declares that after hearing the allegations and proofs the court must pronounce judgment either confirming or annulling and setting aside the election. The next section provides for inspection of the ballots by the court in such contest. Then section 25-14-12, U. C. A. 1943 reads:

"If in any such case it appears that a person other than the one returned has the highest number of legal votes, the court must declare such person elected."

This can only mean that in an election contest the court must declare as elected, the person who has the highest number of legal votes. The sole purpose of an election contest is to determine who received the highest number of votes—that is, who was elected. Sec. 25-14-14, U. C. A. authorized an appeal to the supreme court by either party aggrieved by the judgment.

Where, as here, the sole question in the contest, who was elected, depends upon whether and how certain ballots should be counted, the supreme court has before it just the same question as had the district court: how should such ballots be counted? The answer to that question determines who was elected. The only question presented by the appeal is as to the rulings of the trial court in the counting of the ballots. The record shows the proceedings in the trial court to the ballots to which objection was made by either party and the rulings of the court thereon. These ballots were made a part of the bill of exceptions, and have been brought to this court for inspection and consideration. The California court had before it an almost identical case in *Sweetser* v. *Pacheco*, 172 Cal. 137, 155 P. 639, 643. After discussing each questioned ballot, as attacked by both parties, as has been done here by Mr. Justice MOFFAT, the California court said:

"The proceedings on the trial consisted solely of a recount of the ballots cast, for the purpose of determining whether they were prop-

erly counted. The findings of the trial court show simply the conclusions based entirely on such recount. As already stated, the bill of exceptions shows all objections made by either party to ballots, respondent as well as appellant, as is proper in a proceeding of this character. See *People* v. *Campbell*, 138 Cal. [11], 17, 70 P. 918. In such a proceeding, too, it is clear that, in view of the record, it must be taken as settled that ballots as to which no objection was made were properly counted. Therefore nothing remains for the trial court to do in the matter of this contest except to add to the totals already declared by it said 20 rejected ballots, that is, 12 for Sweetser and 8 for Pacheco, making their respective totals 342 and 341, to make its findings accordingly, and thereupon to enter judgment declaring Sweetser elected. No useful purpose can be accomplished by any further proceedings in the trial court, and the law contemplates as summary a disposition of proceedings of this character as is consistent with a proper ascertainment of the result of the election.

"The judgment is reversed and the cause remanded, with directions to the trial court to count the 20 rejected ballots declared by the opinion herein to have been improperly rejected, for the parties for whom they were cast, viz., 12 for plaintiff Sweetser and 8 for defendant Pacheco; to add to the total vote heretofore declared by the findings as having been received by each party the votes thus gained; to make its findings of fact accordingly; and thereupon to enter judgment annulling the election of defendant, Pacheco, and declaring plaintiff, Sweetser, elected."

Where the case comes before the appellate court on written or documentary evidence, practically as it was presented in the trial court, the appellate court may decide for itself what the facts establish substantially as though the question was submitted to it in an original proceedings. *Winters* v. *Pacheco*, 88 Colo. 105, 292 P. 1061; *Lumm* v. *Simpson*, 207 Ind. 680, 194 N. E. 341; *Campbell* v. *Ramsey*, 150 Kan. 368, 92 P. 2d 819; *Mathewson* v. *Campbell*, 91 Kan. 625, 138 P. 637; 29 C. J. S., Elections, § 314, p. 435.

Other cases indicating that judgment in the cause should be entered according to result as shown by the ballots, and that the cause is usually remanded to the District Court for that purpose, are *Viel* v. *Summers*, 35 Idaho 182, 209 P. 454; *Aura* v. *Brandt*, 211 Minn. 281, 1 N .W. 2d 381; *Kerley* v.

*Wetherell,* 61 Idaho 31, 96 P. 2d 503. Such was the action and order of this court in *Evans* v. *Reiser,* 78 Utah 253, 2 P. 2d 615, 632, where we said:

"This cause is remanded to the district court of Salt Lake county with directions to recast the findings of fact and conclusions of law to conform to the views herein expressed and to enter judgment accordingly."

McDONOUGH, Justice.

I concur in the opinion of Mr. Justice MOF-FAT as to all the ballots except as to K and N. As to those, I concur in what is said relative thereto by Mr. Chief Justice WOLFE.

However, I dissent from the order made, for the reason suggested by the CHIEF JUSTICE. For more than twenty years this court has consistently held in every case involving the question which has come before it, that cross-assignments of error without a cross-appeal are not available to a respondent for the purpose of modifying a judgment below. *Fowers* v. *Lawson,* 56 Utah 420, 191 P. 227; *Commercial Block Realty Co.* v. *Merchant's Protective Ass'n,* 71 Utah 505, 267 P. 1009; *Buttrey* v. *Guaranty Securities Co.,* 78 Utah 39, 300 P. 1040; *Hartford Accident & Indemnity Co.* v. *Clegg,* 103 Utah 414, 135 P. 2d 919, decided in April of this year.

An intimation to the contrary contained in the opinion of the court in *San Pedro, L. A. & S. L. R. Co.* v. *Board of Education,* 35 Utah 13, 99 P. 263, was erased by the writer of the opinion in the subsequent case of *Fowers* v. *Lawson,* supra.

As I read the foregoing cases the problem involved is not that of getting rid of some archaic court rule; it is a problem of construing the statutory provisions relative to appeals to this court. In *Buttrey* v. *Guaranty Securities Co.,* supra, a motion to dismiss respondent's cross-appeal on the ground that it had failed to comply with the statutes relative to undertakings on appeal was before this court for

argument. The cross-appeal was dismissed on such ground, the opinion stating (78 Utah at page 45, 300 P. at page 1043) :

"It is claimed, however, on behalf of the receiver [respondent] that no undertaking is required of him because his is a cross-appeal, and the statutes do not apply to such appeals. But the statutes make no exceptions in favor of cross-appeals; by the plain import of their terms they apply to all appeals."

But were it a question of amending the rules, that should be done in the manner prescribed for so doing, and not by pronouncing such amendment in a cause before the court—and then but by implication.

With the statement made in the opinion of Mr. Justice LARSON that

"the rule as to cross assignments merely upholding the judgment does does not apply to election contests,"

I am not in accord. The sections of the statutes referred to in support thereof apply to the election contest in the court where such contest is heard and determined—the district court. What the statutes say relative to appeal from a judgment in such contest is contained in Sec. 25-14-14, reading as follows:

"Either party aggrieved by the judgment may appeal therefrom to the supreme court as in other cases of appeal from the district court, but such appeal must not stay execution or proceedings, except execution for costs."

The judgment below should be affirmed with costs to respondents.