**Donald L. MOSIER, Plaintiff and Respondent,**

**v.**

**Howard M. GILMORE, Defendant and Appellant.**

**No. 17468.**

Supreme Court of Utah.

July 23, 1981.

---

K. L. McIff, Richfield, for defendant and appellant.

Russell L. Mahan, Springville, for plaintiff and respondent.

OAKS, Justice:

In this appeal, we must decide who was elected sheriff of Garfield County on November 4, 1980. The outcome turns on the significance of 24 ballots that were marked for both candidates. All statutory references are to Utah Code Annotated, 1953, as amended.

Candidate Gilmore defeated incumbent Mosier in the Republican primary, and his name was the only one printed on the November ballot for the office of sheriff (for the remaining two years of the four-year term). (There was no candidate representing any other party.) Mosier ran a write-in campaign, which included the circulation of stickers bearing the words, "For Sheriff, 2 yr. term DONALD L. MOSIER" and a box with an "X" marked in it. The stickers had a peal-off backing and were designed to be affixed to ballots as authorized in § 20–7–20.

After a re-count of the November election ballots, Gilmore was declared the winner by a vote of 958 to 934. Mosier thereupon filed this suit in the district court, challenging the election judges' rejection of the 36 ballots that he claimed should have been counted in his favor. Ruling that 28 of these ballots should have been counted for Mosier, the district court tallied the votes 962 to 958 for Mosier, and declared him the duly elected sheriff of Garfield County. Gilmore filed this appeal.

Because our action with respect to 24 of these ballots is dispositive of this appeal and of the outcome of the election regardless of the merit of Gilmore's or Mosier's contentions on the other contested ballots, this

opinion will be limited to the single issue presented by these 24 ballots.

Twenty-four ballots contained both an "X" in the box opposite Gilmore's name and a write-in for Mosier, signified either by affixing the sticker or by actually writing Mosier's name on the ballot. (Mosier's stickers appear on 18 of these ballots; Mosier's name is written on 6 ballots, 4 of which also contain an "X" opposite his written name and 2 of which have no mark opposite his name.) The election judges refused to count these ballots as votes for either candidate, thus giving the election to Gilmore. The district court counted these ballots for Mosier, giving him the election. If these 24 votes had not been counted, Gilmore would have been elected by a margin of 958 to 938.

Each party to this appeal argues that his position is dictated by statute. Gilmore relies on the following sentence from § 20–7–21:

> If the voter marks in squares opposite the names of more than one candidate for a single office the vote shall be counted for no candidate for such office.

Mosier relies on the following sentence from Section 6 of an Act "Providing for the Use of Electronic Voting Systems in Elections," passed in 1971 (Utah Laws, 1971, ch. 40) and codified in § 20–20–6(5) under the chapter heading "Electronic Voting Systems": [1]

> If the voter has cast more votes for an office than he is entitled to vote for that office as a result of the write-in vote, the write-in vote shall be counted as being the obvious intent of the voter.

Neither of these statutory directions governs the outcome of this case. The sentence from § 20–20–6(5) is clearly inapplicable since its terms apply only to electronic voting systems, and these were manual ballots. The sentence from § 20–7–21 is of doubtful applicability to most of these 24 ballots since its terms apply only to a voter who "*marks in squares opposite the names* of more than one candidate for a single office" (emphasis added), whereas these ballots were marked both in the square opposite the name of one candidate and with a write-in name for an opposing candidate (affixed in most cases by a sticker). Both parties seek to extend the policies of these statutes beyond their express terms, but that effort is mutually self-defeating since the two policies seem to dictate contradictory results on the facts of this case.

More to the point is § 20–7–25, which specifies in its first clause:

> If a voter *marks more names* than there are persons to be elected to an office, . . . his ballot shall not be counted for such office; . . . [Emphasis added.]

If the words "marks more names" apply to the insertion of the name of a write-in candidate (whether by script or by sticker, § 20–7–20), as well as to the "mark," "cross," or "cross-mark" referred to later in this statute, then § 20–7–25 requires the rejection of the 24 ballots containing two "marks" for one office. This interpretation seems most consistent with the way the Legislature has used the word "mark" and various of its derivations throughout chapter 7 of Title 20 (Ballots and Voting).[2] The quoted language from § 20–7–25 therefore provides one basis for our holding.[3]

---

1. The term "electronic voting system" is defined as "a system in which a voting device is used in conjunction with paper ballots or ballot cards, such that votes may be recorded and then subsequently counted and tabulated by automatic tabulating equipment." § 20–20–1(7).

2. Section 20–7–21 (ballots "properly marked by the voter" to be counted notwithstanding printing errors); § 20–7–22 (voter to fold ballot "without displaying the marks thereon"; each voter to "mark and deposit his ballot without undue delay"); § 20–7–24 (voter "unable to prepare ballot without assistance" to be assisted "in the marking thereof"; voter who "cannot read his ballot or mark it correctly" to be assisted "in preparing and marking his ballot"); § 20–7–26 (excess ballots to be "marked 'excess ballots'").

3. In contrast to Justice Stewart's dissenting opinion, we cannot regard § 20–7–20 as dispositive. That section merely authorizes write-in votes. The Legislature's evident purpose in including the language emphasized in the dissent was to ensure that an uncontradicted write-in vote be counted "whether a cross-

In the alternative, this same outcome is dictated by the general rule that governs the validity of contested ballots in the absence of specific legislative direction on the effect of a particular alleged defect.

■ The governing rule of voter intent specified in § 20–7–21 was enacted in 1933, in an apparent reaction to this Court's highly technical decision in *Evans v. Reiser*, 78 Utah 253, 2 P.2d 615 (1931), which counted only 24 of 571 challenged ballots. The new language reads as follows:

> No ballot marked by the voter shall be rejected because of marks on the ballot other than prescribed in this section, [with a single exception not pertinent here]. *The intent of the voter shall be given full consideration* and mechanical and technical defects in voting and failure on the part of the voter to follow strictly the rules for balloting as laid down in section 20–7–19 and 20–7–20 of the Utah Code Annotated 1953, shall not invalidate a ballot. [Emphasis added.]

The more lenient attitude toward deviations in the marking of ballots is evident in the succeeding case of *Frantz v. Hansen*, 104 Utah 412, 140 P.2d 631 (1943). Here, the Court observed that the law was amended in 1933 "so that more liberal interpretation may be given a ballot *in order to preserve the full intent of the voter* as evidenced thereon." (Emphasis added.) 104 Utah at 415, 140 P.2d 631. The critical importance of seeking and giving effect to the "intent of the voter" is apparent in the rulings on individual ballots in that opinion, in which only one of the fourteen challenged ballots was rejected. It is evident from *Frantz v. Hansen* that, subject to legislative direction to the contrary, a ballot

may be counted if the voter has given a sufficient indication of his or her intent, even though by means different from those prescribed by statute.

■ At the same time, the voter's intent can only be honored if it is susceptible of determination without speculation. Section 20–7–25 specifies that "if for any reason it is impossible to determine the choice of any voter for any office to be filled, his ballot shall not be counted for such office; ..." This was the principle elaborated in the two-Justice concurring opinion of Chief Justice Wolfe in *Frantz v. Hansen, supra*, which points out that § 20–7–21's direction to give effect to the intent of the voter does not permit election judges or courts "to venture a guess as to the intent." Instead:

> There must be sufficient indication from the ballot as to what the voter really intended. The indications must be such as lead the mind naturally and without guess to infer the voter's intent.

104 Utah at 421, 140 P.2d 631. If the markings for a particular office on the ballot are reasonably susceptible of more than one interpretation of the voter's intent, the ballot would not be a sufficient indication of the voter's intent. When that intent is "impossible to determine," the ballot "shall not be counted for such office." § 20–7–25.[4]

■ In light of the provisions of §§ 20–7–21 and 20–7–25 quoted above, those who judge the validity of a challenged ballot should seek to give effect to "the full intent of the voter as evidenced thereon," *Frantz v. Hansen, supra*, 104 Utah at 415, 140 P.2d 631. But if the ballot contains no indication sufficient to "lead the mind naturally and

mark is made or is not made opposite such person." The effect of contradictory votes— one by a write-in and one by marking the name of a candidate printed on the ballot—is not treated by § 20–7–20, any more than it is by § 20–7–21, which provides that ballots marked for a candidate whose name is printed on the ballot "shall be counted for the candidates designated by the marks in the squares, ..."

*Maw v. Lee*, 108 Utah 99, 157 P.2d 585 (1945), cited by the dissent, supports this result by its holding that contradictory votes for dif-

ferent candidates for the same office cannot be counted. However, this holding was based on a narrow principle of statutory construction inapplicable to the facts of this case.

4. In contrast to Justice Howe's dissenting opinion, the issue is not which of two possible or "reasonable" inferences is the "more likely." If there are two possible inferences within the realm of reasonableness, judges should not choose between them, and the ballot should not be counted for that office.

without guess to infer the voter's intent," *id.* at 421, 140 P.2d 631, or if for any reason it is "impossible to determine" the voter's choice, § 20–7–25, then the ballot should not be counted.

In applying the rule of voter intent as evidenced on these 24 ballots, we do not exercise the same deference toward the findings and conclusions of the trial judge as is appropriate in a case where the resolution of the controversy is dependent upon evidence heard in the trial court. In contrast, the resolution of this appeal turns solely on the meaning and effect of documents—the ballots—as to which the trial court has no advantaged position over this Court. *Lake v. Hermes Associates*, Utah, 552 P.2d 126, 128 (1976); *LeBaron v. Crismon*, 100 Ariz. 206, 412 P.2d 705, 706 (1966); *In re Estate of Baker*, 59 Cal.2d 680, 31 Cal.Rptr. 33, 381 P.2d 913, 914 (1963); *In re Estate of Larson*, 71 Wash.2d 349, 428 P.2d 558, 561 (1967).

■ As Gilmore argues, the contradictory markings on each of these individual ballots could reasonably be attributable to a number of motives inconsistent with an intent to cast a vote that would be counted for Mosier: The voter may have voted for both candidates because he liked both. He may have voted for both because he disliked both and desired to cause confusion and controversy. (That was surely the outcome in this case.) The voter may have voted for Mosier by write-in, changed his mind, and marked his ballot for Gilmore but neglected to scratch out the write-in. Or, the voter may have been confused by the publicity incident to the write-in campaign, believed he was supposed to make the ballot complete by attaching Mosier's write-in sticker, done so, and then voted for Gilmore.

On the basis of these and other possibilities, we are unable to conclude that these 24 ballots that contain both the addition of Mosier's name and an "X" for Gilmore "lead the mind naturally and without guess to infer the voter's intent." In fact, it is difficult to imagine a circumstance

more squarely ambiguous than this. Considered solely from the standpoint of either candidate, each of these ballots contained an acceptable vote in his favor. But each ballot also contained an equally acceptable vote for the opposing candidate. Consequently, it is impossible to determine the voter's choice for the office of sheriff on these ballots, and they should not have been counted.

The judgment of the district court is reversed and the cause is remanded with directions to enter judgment confirming the election of Gilmore. Costs as directed in § 20–15–13.

HALL, C. J., and J. ALLAN CROCKETT, Retired Justice, concur.

STEWART, Justice (dissenting):

I do not believe the Legislature left it to the courts to decide what a voter really intended when he votes for two candidates for the same position. After the predecessor to § 20–7–21 [1] was amended to insert the words relating to the intent of the voter, this Court carefully analyzed the effect of the amendment in *Maw v. Lee*, 108 Utah 99, 157 P.2d 585 (1945). The Court held that the effect of amendment was that two votes for different candidates for the same office invalidated both votes. The rule is a per se rule with respect to that kind of defect, and "the intent of the voter" language inserted by the amendment was not intended to change that rule.

In 1979 the Legislature amended § 20–7–20 to deal with the use of stickers for a write-in candidate. The provision provided that "[t]he voter may also insert the name of a valid write-in candidate in writing or by means of a sticker with the office and write-in name printed on it. Write-in votes shall be listed in the blank write-in part of the ballot, *and the voters shall be deemed to have voted for that person, whether a cross-mark is made or is not made opposite such person.*" [Emphasis added.]

The "write-in votes" in this case are, in my view, governed by this provision. The

1. Section 25–6–21, Utah Code Ann. (1943).

statutory phrase, "the voters shall be deemed to have voted for that person," should be taken at face value. It is clear beyond peradventure that a person who goes to the trouble of writing in a candidate's name, and especially one who goes to the trouble of obtaining a sticker, making the necessary preparations to take it with him to the voting booth, retrieving it from a pocket or purse, and sticking it on a ballot, intended that to be his vote, though the voter may have made the mistake of inadvertently voting for another candidate for the same office—as it is so easy to do with Utah's lengthy ballot.

As I read the statutes, the Legislature intended to establish per se rules with respect to double voting for candidates for the same office. Clearly it comports with common sense to provide that a ballot which is marked twice with a cross for candidates for the same office printed on the ballot should have neither mark counted, since it is impossible to determine what the intent of the voter was. The case is otherwise, however, with respect to write-in candidates. A person who writes in a candidate's name does so with considerable preplanning, preknowledge, and a specific intent to vote for such person. Those factors are sufficient to override any confusion as to the voter's intent which may arise as a result of a second vote for a competing candidate.

It is not sound judicial policy for this Court to adopt a rule which requires a determination of each voter's intent in the case of double voting. Elections could be tied up interminably while judges sift through the ballots which, in the case of a statewide election may number several hundreds of thousands, to determine what the "intent of the voter" was. In addition, some solicitude should be shown to write-in candidates. All kinds of unpredicted events may occur between the time of the printing of a ballot and election day. The death of a candidate, the conviction of a candidate for crime, and numerous other occasions may give rise to a large scale write-in campaign. To thwart the intentions of voters because of an inadvertency caused by the straight-ticket voting mechanism and the long lists of offices and candidates for those offices which are not widely known to the electorate is not consonant with the legislative provisions and not a sound result in laying down a rule designed to protect such a fundamental right as that of voting.

HOWE, Justice (dissenting):

I dissent. I do not believe that § 20–7–25 relied upon by the majority opinion, or § 20–7–21 apply in this fact situation. I also agree that § 20–20–6(5) is not controlling here, but believe in our quest to find the voter's intent, we should heed the legislative recognition in that statute that when a voter casts more votes for an office than he is entitled to vote for, and one of the votes is a write-in vote, the write-in vote is the "obvious intent" of the voter.

Section 20–7–21 mandates that the intent of the voter shall be given "full recognition." I find it difficult to believe that a voter who goes to the trouble of either writing in the name of a candidate or placing that candidate's sticker on the ballot does not clearly intend to vote for the write-in candidate, despite the fact that the voter has also placed an "X" opposite the name of a candidate whose name has been printed on the ballot. I believe that this intent can be ascertained without guessing and that it complies with the statement of Chief Justice Wolfe in *Frantz v. Hansen*, 104 Utah 412, 140 P.2d 631 (1943), set forth and approved in the majority opinion, that "There must be sufficient indication from the ballot as to what the voter really intended. The indications must be such as lead the mind naturally and without guess to infer the voter's intent." The writing in of a candidate's name or the placing of his sticker on the ballot is a more thoughtful, intentional and deliberate act than the mere scratching of an "X" opposite the name of the candidate whose name has been printed on the ballot, and which in this case was the last of thirteen candidates listed in a column on his party's ticket. The Legislature has recognized the validity of that inference in § 20–20–6(5) governing the use of elec-

tronic voting systems, and has declared the intent of the voter in that situation to be "obvious." If it is obvious there, it is likewise obvious in the instant case.

I am not persuaded by the appellant's arguments that it is just as reasonable to infer that the voter may have intended to vote for both candidates because he liked both, or disliked both, or may have been trying to "update" the ballot by attaching the write-in sticker. While I do not deny that occasionally a voter may have such motives, I believe that it is unreasonable in this case to infer that such was the motive of the voters here since they comprised 24 votes out of a total of only 1920 ballots cast. It is much more likely and reasonable to believe that they were intending to cast their vote for the write-in candidate rather than engaging in any divisive or abnormal practice. We should assume that these were sincere voters and not attribute to them motives other than those possessed by conscientious citizens.

I would also count in favor of the respondent the other four ballots which are referred to in the majority opinion but are not discussed therein. On those ballots, the voter had not marked an "X" opposite the printed name of Gilmore. Instead, the voter had placed one of Mosier's stickers, not in the exact write-in slot for sheriff, but in an adjoining space on the ballot. In three of those instances it appears that the voter simply mistook the exact place for his sticker and placed it one space above the correct place. However, since the sticker contained the name of the candidate and the office he was seeking, there can be no mistake as to the voter's intent. This situation is covered by § 20–7–21 wherein it is provided that mechanical and technical defects in voting and the failure on the part of the voter to follow strictly the rules for balloting shall not invalidate a ballot.

I would affirm the trial court's decision.

MAUGHAN, J., did not participate herein prior to his death; CROCKETT, Retired Justice, sat.